## EVANS *v.* COLEMAN *et al.*

1. In the trial of an action by a creditor to set aside and cancel a fraudulent conveyance, it was inaccurate and therefore erroneous to charge that if the debtor made the conveyance with intention to "delay, hinder *and* defraud" his creditors, it would be void. The acts voiding the conveyance should have been stated disjunctively. Stating them conjunctively imposed upon the creditor a greater burden than the law does.

2. Ratification generally relates back to the act ratified. But where a mortgage is executed by a debtor to a creditor and not delivered to the latter but to the clerk for registration, and after it is recorded the creditor accepts and thus ratifies it, judgment liens obtained after the delivery to the clerk but before the ratification by the creditor take precedence of the mortgage.

Submitted April 13, — Decided May 19, 1897.

Equitable petition.    Before Judge Hart.    Hancock superior court.    August term, 1895.

Samuel Evans brought his petition against Della C. Courson, her husband John M. Courson, her father W. L. Coleman, H. J. Quinn, and Sibley, Nixon & Co., alleging as follows : On August 18, 1893, plaintiff obtained judgment against Mrs. Courson for $1,622.28 principal, $225.74 interest, and costs. When he received her notes in the suit on which the judgment was obtained and upon which the suit was brought, she had sufficient property to pay his claim, which was liable for the debt and to levy under his fi. fa.    Beside other property, she owned a house and lot near Devereaux, where she resided and still resides, which is worth $3,000 and was reasonably worth that sum at any time within the last three years, if fairly and publicly sold.    Prior to his suit, Sibley, Nixon & Co. had obtained judgment against Mrs. Courson for $774.    While their suit against her was pending, and before either of the judgments was rendered, her husband, in her name, gave to Coleman a mortgage on the house and lot, purporting to be for $1,000 but really for little or no consideration except as hereafter alleged.    About the same time she made or pretended to

make to R. L. Courson, her husband's brother, another mortgage on the house and lot for $700, and still another to Quinn upon her other lands for $1,000.   None of said mortgages were ever really signed, sealed and delivered to the mortgagees, but John M. Courson signed her name thereto and caused them to be recorded to deter her creditors from levying on the land, and in the event of levy, to enable some one for her to buy the property at less than its value.   In 1893 the fi. fa. of Sibley, Nixon & Co. was levied on said house and lot, and the same, after legal advertisement, was sold on the first Tuesday in March, 1893, to Coleman for $200, he having caused to be made at the sale the announcement that said sale was made subject to his mortgage, and John M. Courson, or some one for him, announced that it was subject to the mortgage of R. L. Courson, both of the mortgages being prior in date to the judgment of Sibley, Nixon & Co.   At this time various creditors of Mrs. Courson held justice court fi. fas. against her, which were liens on the property prior to the judgment of Sibley, Nixon & Co., and which were paid out of said sum bid at the sale, leaving nothing but cost paid on the last named judgment.   On November 9, 1893, plaintiff caused his fi. fa. to be levied on the lands mortgaged to. Quinn (being 166 acres described), and after legal advertisement the same were sold by the sheriff and brought $574.00 which, after paying costs and fees, was credited on the fi. fa. of Sibley, Nixon.& Co.   Plaintiff charges that Coleman and John M. Courson have damaged him $574.00 by preventing the sale of the house and lot for its value, by said announcement at the first sale, and by the making and recording of said mortgages.   He prays, that the deed from the sheriff to Coleman, as well as the mortgages, may be canceled as fraudulent and void, and that, upon payment by plaintiff to Coleman of $200 which is hereby tendered, a resale of the house and lot be decreed in payment of his execution.

Coleman answered, denying that the mortgage to him was for little or no consideration, and claiming that the consideration was to secure him a debt for $1,000 which was actually and bona fide due him by Mrs. Courson at the time of the execution of the mortgage.   He further denied that the mort-

gage to him was never delivered, and alleged that it was executed and handed to the clerk for record by Mrs. Courson and notice given to him of the fact, when he accepted the same and ratified all that had been done in reference to its execution and record. He denied that the purpose of the mortgage was to deter creditors from suing their claims and levying on the land, or to make her convey the property for less than its value. He admitted the levy and sale under the fi. fa. of Sibley, Nixon & Co., and the making of the announcement at the sale as alleged. The $200 which he paid, added to the sum secured by the two mortgages, was a fair price for the property. His only purpose in buying the same was to save the debt due him by Mrs. Courson. The mortgage was accepted and notice of the same given at the sale in the utmost good faith. He denied that he had practiced a fraud on any one, or that he was in any combination, plan or scheme to act so as to prevent the property from bringing its fair value at the sale.

Mrs. Courson answered, admitting the indebtedness to plaintiff and her ownership of enough property, at the time the debt was made and the judgment rendered thereon, to have been amply sufficient to have paid it if she had not owed other people. The house and lot in Devereaux has never been worth $3,000 at any time within three years; said estimate is very extravagant. The mortgages referred to were executed in good faith and founded upon a valid and perfect consideration. At various times she had procured money, merchandise and other goods of value from her father, and owed him an account for rent, in all amounting to at least $1,000. As she had been paid off by him her proportion of what he could give her as a present, these matters, by special understanding, stood on the footing of a valid debt by her to him. It was so understood by them both, and it was further agreed that she would execute proper security to him therefor. He had asked for such security prior to the execution of the mortgages, and the debts due by her to him were prior to any judgment against her, and, so far as her memory serves her, were prior to any transactions with plaintiff. The mortgage to her father was signed, sealed and delivered by her to him, and by him accepted as given by

her, as a security for the debt in the terms of the former agreement, and in perfect good faith on the part of both of them, and not with any fraudulent purpose or any fraudulent combination. She was indebted to R. L. Courson, and likewise secured him by mortgage which was delivered to him for record. She denies any collusion or conspiracy with him or Coleman by having an announcement made at the time of the sale of the existence of said mortgages; but said announcement was authorized by the existing facts. The $200, added to the principal and interest due by her to her father and R. L. Courson, was a fair price for the property. She has in no way damaged the plaintiff; but after all her property was brought to sale under the various executions against her, there was not enough to pay what she owed. The answer of John M. Courson was to the like effect.

The verdict was in favor of defendants, and plaintiff's motion for a new trial was overruled. The motion alleges that the verdict is contrary to law and evidence, and especially in that it makes the mortgage of Coleman a prior lien to the judgment of Sibley, Nixon & Co., when that judgment was rendered and recorded and Coleman had notice of it before he received the mortgage or knew of its existence. The motion further alleges that the court erred ·in refusing to give the following charges as requested: (*a*) "Delivery of the mortgage to the clerk for record was not delivery to the mortgagee, unless the clerk was the agent of the mortgagee to receive it; and if the jury believe from the evidence that the mortgagee received it afterwards, this delivery, if it was delivered, does not relate back to the date of signing. (*b*) If this transaction was consummated with intent to wrong creditors dealing with the debtor and did hurt them, it was fraudulent. (*c*) Where fraud is charged, the jury may consider the relation of the parties, and as evidence of fraud the mortgage of all of her property, and to do so in an unusual manner is a badge of fraud. (*d*) If these defendants fail to produce testimony to explain the transaction when the bona fides of the transaction is in issue, it is a badge of fraud." Also, that the court erred in charging as shown in the opinion.

On the trial H. J. Quinn testified, that in the spring of 1892 he worked for Dr. John Courson, and on the day the mortgage to Coleman was signed he also witnessed one to R. L. Courson. Dr. Courson gave him the mortgages to be recorded.. They were then taken back to Dr. Courson. The next day he came back to town by Dr. Courson's directions, and offered the Coleman mortgage to the mortgagee, who read it and handed it back to witness, and said he did not want it, that Dr. Courson and his wife did not owe him anything. Witness took the mortgage back to Dr. Courson and never saw anything more of it, nor did he ever see the R. L. Courson mortgage after the day it was recorded and he returned it to Dr. Courson. The house and lot were worth $2,000 when sold by the sheriff to Coleman. R. H. Lewis testified, that when he took judgment in favor of Sibley, Nixon & Co. *v.* Mrs. Courson, the clerk told him of Dr. Courson having had the mortgage recorded. On the next day he saw Coleman and complained of the way Courson had acted, referring to the mortgages. Coleman denied having the mortgage, and witness went with him to the clerk to see it. After seeing it Coleman remarked that he reckoned the mortgage was to his son William. They went back and the clerk read it "William L. Coleman, Sr." Judge Coleman then said he was tired of the doctor using his name that way. The testimony of this witness supported the petition as to what the house brought at the sale of the property and the application of the proceeds to the executions therein stated. Quinn had told him there was no consideration for his mortgage. The clerk testified in part corroboration of Lewis, and further, that he asked Judge Coleman if he wanted to pay for the record of his mortgage, and he did not pay for it.

Coleman testified that he took the mortgage to secure debts his daughter owed him ; part was for accounts at the store, some was money including $200 put in one of the places when it was sold to Dr. Courson, and part was for rent of another place at $160.00 a year. The amount of his bid, and the amount of his own mortgage and of the R. L. Courson mortgage, made a fair price for the place. The rent was three years rent of one place at $160.00 per year. He had no account of charges against

Mrs. Courson except that made out and given to his counsel which had been lost, except some accounts at the store. He had no book of original entries with these charges in it. The rent was for three years before the mortgage was taken; was not certain what years they were; but the taking of the mortgage was an honest transaction; the amount and more was due him by Mrs. Courson; he had given her all he could in justice to his other children; had given them $2,000 each and some more than that. The note for $200 was paid at bank. Some of the accounts included in the mortgage were made in 1889 and 1890, but all before 1892. Mrs. Courson testified, that about April, 1892, she gave her father the note and mortgage, the consideration being part cash, part supplies furnished her; and no part of it had been paid. She had not seen the mortgage since executing it, and her father had said nothing to her about it. The indebtedness was created at different times; dates were not remembered. She declined to answer as to consideration, etc., of other mortgages. She did not know what became of the account, or who put the mortgage on record, or whether her father refused to receive it.

*James A. Harley* and *William H. Burwell*, for plaintiff.
*James Whitehead* and *Frank L. Little*, for defendants.

SIMMONS, C. J. The official report states, in substance, the pleadings and the evidence. It will there be seen that Evans filed his equitable petition against Mrs. Courson, her husband John M. Courson, her father W. L. Coleman, and others mentioned therein, to set aside certain mortgages executed by Mrs. Courson to her father and to others, upon the ground that they were given for the purpose of delaying or defrauding her creditors. He also, in the same petition, claimed damages against Coleman and John M. Courson for recording the mortgages alleged to be fraudulent, and for giving notice thereof at a sale of the mortgaged property, held under an execution against Mrs. Courson in favor of Sibley, Nixon & Co., which notice prevented the property's bringing its full value at the sale. Evans claimed in his petition that the mortgages being fraudulent and void, notice of them given at the sale prevented others from bidding and enabled Coleman,

the holder of one of the mortgages, to buy the property for $200 when it was worth much more than that sum. The $200 was applied to some justice's court fi. fas., and therefore Sibley, Nixon & Co., did not realize anything from the sale. Afterwards Evans obtained his judgment and had it levied upon other property of Mrs. Courson, but the proceeds of the sale had to be applied to the judgment of Sibley, Nixon & Co., which was older than his; whereas if the notice of the fraudulent mortgages had not been given, the judgment of Sibley, Nixon & Co. would have been satisfied out of the proceeds of the first sale and his (Evans's) junior judgment would have taken the proceeds of the last sale.

1. The trial judge, in instructing the jury as to what acts were sufficient to set aside and invalidate conveyances, charged as follows: "If you believe from the evidence that the making of the mortgage to Coleman by Mrs. Courson was intended to delay, hinder and defraud the creditors of Mrs. Courson, then you should find for the plaintiff." The jury having returned a verdict against the plaintiff, the latter excepted to this charge and made it one of the grounds of his motion for a new trial. We think the exception is well taken. The second paragraph of section 2695 of the Civil Code declares in substance that every conveyance . . had or made with intention to delay *or* defraud creditors, and such intention known to the party taking, shall be void. Under this section a conveyance made by a debtor to another with the intention to delay his creditors is void; so if it be made with intention to defraud his creditors, it is void. If the plaintiff, who seeks to set aside a conveyance on this ground, proves that it was made either to delay or to defraud creditors, it is sufficient. The jury would be authorized to set aside the conveyance upon satisfactory proof of either. It is not necessary that the plaintiff prove intention both to delay and to defraud. The trial judge by his charge put upon the plaintiff a greater burden than is done by our statute. The jury might have believed from the evidence that the conveyance was made with intention to delay creditors, and yet, under the charge as given, could not find the conveyance

fraudulent and void unless the evidence had authorized them to find that it was made with intention to both delay and defraud creditors. We think, therefore, that the court erred in the charge excepted to.

2. The evidence for the plaintiff shows that on the day Sibley, Nixon & Co. obtained their judgment against Mrs. Courson and after the judgment was rendered, their attorney visited the clerk's office for the purpose of ascertaining whether there were prior liens against her. He found in the office a mortgage executed by Mrs. Courson to her father, Mr. Coleman, which had been recorded. The attorney saw Coleman the next day and inquired about the mortgage, and Coleman told him that he knew nothing of it. It appears further from the evidence, that the mortgage to Coleman had not been delivered to him by the mortgagor at that time, but had been sent through an agent of the mortgagor to the clerk for record. On this state of facts the plaintiff requested the court, in writing, in substance to charge that where a mortgage is executed by a debtor to a creditor and not delivered to him but sent by the mortgagor to the clerk for registration, and after it is recorded the creditor accepts it and thereby ratifies it, judgment liens obtained by other creditors after the delivery to the clerk but before ratification by the creditor take precedence of the mortgage. The court refused this request, and the plaintiff excepted to this refusal and assigns it as error.

Under the facts as disclosed by the record, the court should have charged the jury as requested. If the jury believed that Mrs. Courson executed this mortgage to her father, Mr. Coleman, and sent it to the clerk for registration, that it was recorded, and that Coleman knew nothing of the mortgage until after its record, then any judgment obtained against Mrs. Courson by another creditor after the record of the mortgage but before its acceptance by Coleman had a lien against her property prior to the lien of the mortgage. Ratification generally relates back to the act ratified. So if a bona fide mortgage is executed without the knowledge of the mortgagee who, however, subsequently ratifies it, this ratification generally relates back to the execution of the mortgage; but if,

between the execution of the mortgage and the ratification thereof, other creditors obtain judgments against the mortgagor, the liens of these judgments will take precedence of the mortgage lien. To all conveyances relating to real property delivery and acceptance are necessary and essential. There can be no valid conveyance without delivery and acceptance. In discussing this subject, Mr. Justice Davis, in the case of Parmelee *v.* Simpson, 5 Wall. 81, says (p. 86): "But it is said that he could ratify the acts of Bovey and the register. This is true, but he did not do this until after the execution and registration of the mortgage; and this ratification can not relate back so as to cut out the mortgage. Simpson acquired no title until after the rights of the mortgagee had accrued, and he holds it encumbered with the lien of the mortgage." Mr. Devlin in his work on Deeds, 1st vol., § 291, says: "Subsequent assent of the grantee does not operate by relation to pass the title as of the time of delivery against creditors of the grantors, whose rights have attached prior to the time the grantee manifested his assent." In the case of Hibberd *v.* Smith, 67 Cal. 547, s. c. 56 Am. R. 726, it was held: "Where a deed is delivered to a third person for the use of the grantee, but without his knowledge or assent, his subsequent assent will not defeat the lien of an intervening judgment against the grantor." See also Clark *v.* National Bank, 66 Fed. Rep. 404–408. *Judgment reversed. All the Justices concurring.*