NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY *v.* CHILDS *et al.*

No. 11833. NOVEMBER 9, 1937. REHEARING DENIED DECEMBER 9, 1937.

*Jones, Powers & Williams,* for plaintiff.

*George G. Finch* and *McElreath, Scott, Duckworth & DuVall,* for defendants.

ATKINSON, Presiding Justice. LeRoy W. Childs executed to New England Mutual Life Insurance Company, on November 15, 1929, a deed conveying described realty hereinafter referred to as Peachtree Street property in the City of Atlanta, to secure a promissory note for $45,000 principal and certain interest notes. Childs failed to pay an instalment of principal that fell due on December 1, 1932; and failing also to pay an interest note falling due June 1, 1933, the company in pursuance of an accelerating clause in the contract, immediately declared the entire debt due,

and instituted suit upon the note. A judgment was rendered on November 4, 1933, for $45,744.50. The land was sold at sheriff's sale on January 2, 1934, and was bid in by the company for $500. That sum was credited on the debt. Another credit of $24,500 was added, representing an alleged subsequently "stipulated and agreed" fair value of the property, thus leaving a deficiency of $20,714.50. Before default in payment of principal and commencement of the action, Childs, on January 30, 1932, executed to his wife a warranty deed conveying certain other property. Subsequently to the sheriff's sale and entry of credits, the company on January 29, 1934, instituted an action against Childs and his wife, to cancel the deed to her, and to obtain general relief. The alleged grounds for cancellation were: (a) that the deed was made voluntarily and without consideration, while Childs was insolvent; (b) that the deed was executed by Childs for the purpose and with the intention "to avoid paying the indebtedness due by him to your petitioner," which "intention and purpose . . was known to and concurred in by" his wife, and the transaction was merely a fraudulent scheme and plan to delay and defraud petitioner in collecting its debt. The defendants filed separate answers denying the above-mentioned allegations as to grounds of relief. In paragraph 7 of the answer interposed by Childs he admits the alleged credits upon the execution, but denies any further indebtedness, "for the reason that the same has been settled and canceled in full by the plaintiff taking over the property described in the security deed . . under the conditions as set out in the petition." This answer was amended by alleging that at the time of the sheriff's sale the property was worth the full amount of the secured debt; that the defendant had procured persons to bid for the property up to its full value, but that the plaintiff, desiring to avoid payment of commissions incident to the sheriff's sale, agreed with the defendant that if he would not procure bidders the plaintiff would buy in the property for a nominal consideration, and that the full value thereof would be credited on the execution, the effect of which would be to relieve the defendant from any deficiency. The amendment was stricken on motion. The case proceeded to trial, and the judge restricted the issue to cancellation of the deed from Childs to his wife, giving the jury two forms of verdict, one to be returned accordingly as the jury might find for

or against cancellation. The verdict against cancellation was returned. A motion for new trial was overruled, and the plaintiff excepted. Childs filed a cross-bill of exceptions assigning error on the judgment striking his amended answer. He had previously filed an original bill of exceptions assigning error generally on the final judgment, and on the antecedent ruling striking the amendment to his answer. On review that judgment was reversed. *Childs* v. *New England Mutual Life Insurance Co.*, 184 *Ga.* 637 (192 S. E. 433). Childs now seeks to withdraw his cross-bill of exceptions in the case made by the present writ of error, on the ground that the question raised by said cross-bill of exceptions has become moot in consequence of the judgment of the Supreme Court reversing the judgment of the trial court on his former original bill of exceptions. The plaintiff consents to the withdrawal, provided that it is not on the ground that the question is moot.

■■ The rulings announced in the first and second headnotes do not require elaboration.

■ The third special ground of the motion for a new trial complains of the ruling rejecting testimony of Childs on cross-examination. He had testified that in his opinion the property sold at sheriff's sale was at the time of such sale worth the amount of the fi. fa. With reference to this the witness was asked if a number of times since the sale the plaintiff had not offered to reconvey the property for $25,000, to which the witness answered "No." Following this was a long series of separate questions and answers which in his ruling the judge grouped as relating to (1) what plaintiff offered; (2) whether witness would buy on terms; (3) whether he would buy for cash or not, and ruled them out collectively and separately. None of them mentioned values or offers at the time of sale, but subsequently and at the time of trial. The assignment of error is that the testimony was relevant and admissible on cross-examination to test the value of the witness's opinion, and to aid the jury in determining what weight and credit should be given the opinion. The only issue being tried was as to cancellation of the deed executed January 30, 1932, executed by Childs to his wife. The only alleged grounds of cancellation were (1) that the deed was voluntary and without consideration, made by Childs when he was insolvent; (2) that the

deed was made by Childs fraudulently to hinder or delay plaintiff in collection of its existing debt, and that the grantee accepted the deed knowing of such fraudulent purpose. The questions and answers were not of such materiality and relevancy to the alleged grounds of complaint as to render them admissible.

■ The fourth ground complains of an instruction to the jury that the value of the Peachtree Street property (sold at sheriff's sale in January, 1934) is material only as it "may illustrate the question of the solvency or insolvency of" the defendant Childs "on January 30, 1932," the date of the conveyance to his wife. The charge was not erroneous on the grounds, as contended: (a) That "under the law . . a debtor who makes a voluntary conveyance is deemed to be insolvent if at the time of said voluntary conveyance he does not retain property that is accessible to his creditors and ample to pay his existing debts; and it appearing that the Peachtree property referred to in said charge was not sufficient to pay the indebtedness . . to movant, the value of that property on the date of . . Childs' conveyance to his wife was not material or relevant upon any issue in the case." (b) One issue was whether the deed of January 30, 1932, was a voluntary conveyance that rendered Childs insolvent. At that time the Peachtree property was encumbered by security deed, and subsequently was brought to sale by the sheriff and brought less than the amount of the fi. fa., which conclusively established that the property was worth less at the time of the voluntary conveyance than the indebtedness to the company; and consequently the value of the property on the date of the alleged voluntary deed could not be considered as illustrative of the solvency of Childs when the deed was made. (c) That by such charge the jury was "misled . . into believing that if the Peachtree property was worth, on January 30, 1932, the amount of . . indebtedness to movant, then . . Childs did not render himself insolvent by the conveyances he made to his wife on that date." (d) That at the time of such conveyance on January 30, 1932, the secured debt was not due, and movant could not proceed to subject to payment of his debt other property which Childs retained. Consequently the test of whether Childs rendered himself insolvent depended on whether or not he retained property accessible to his existing creditors, not at the time of the alleged conveyance, but at the time of the enforce-

ment of the indebtedness. (e) The court should have instructed the jury "that they could consider, as illustrating the solvency or insolvency of . . Childs on January 30, 1932, the value of the Peachtree property only at the time it was brought to sale, . . and that . . they could not consider the value . . on the date of the alleged voluntary conveyance."

■ Ground 5 complains of the charge to the jury: "You must decide whether or not . . Childs was insolvent on January 30, 1932. If he had sufficient property or money on that date, taken at a fair valuation on that date, to pay all his obligations, then he was solvent; if he did not, then he was insolvent. One making a conveyance of property will be insolvent if after the conveyance he does not have or retain sufficient property to pay his then existing debts." This charge was not erroneous, as contended, on the grounds: (a) "Said charge is conflicting, confusing, and misleading. In one sentence the jury is told that if Childs had sufficient property or money, taken at a fair valuation on the date of the conveyance, to pay all his obligations, then he was solvent; and in the next sentence it is told that he will be insolvent if after the conveyance he does not have or retain sufficient property to pay his then existing debts." (b) "In order for the debtor to be deemed solvent at the time of the alleged voluntary conveyance, the property retained must be sufficient at the time of the maturity and enforcement of his existing debts to pay those debts, and it is not sufficient that the property retained had a value on the date of the voluntary conveyance sufficient to pay the existing debts, where, as in this case, when the indebtedness matured and was sought to be enforced the retained property was insufficient." (c) "Said charge, and particularly the last sentence thereof, was not supported by the evidence, and was indeed contrary to the evidence, it appearing from the uncontradicted evidence that on the date of the conveyance . . Childs stripped himself of all his property except the Peachtree property that was encumbered by the lien to secure, and the sale of that property at sheriff's sale under movant's fi. fa. conclusively established that that property was insufficient to pay that indebtedness, it having brought at the sale less than the amount of the fi. fa." (d) "In order for a voluntary conveyance to be good as against existing creditors, the property retained by the debtor must not only be sufficient in value at the

time of the voluntary conveyance to satisfy his existing debts, but it must be property that is accessible to his creditors and subject to levy by execution. In this case if . . Childs, under the evidence, retained any money or securities, they were in a lock-box or deposit box which had been transferred into his wife's name, and said money or securities were not accessible to his creditors and subject to levy by execution; and the jury by said charge could have understood that such money or securities could be counted to determine whether or not sufficient property was retained."

■ Ground 9 complains of the charge: "I have instructed you also that if a debtor retains sufficient money, property, or effects to pay all obligations due at the time of any conveyance of the property, that then such grantor or person conveying would not be insolvent." This was not erroneous, as contended, on the grounds: (a) "For all the reasons set forth in paragraph 5 hereof, to which reference is hereby made as a part hereof." (b) "Said charge does not state the correct rule of law, which is that in order for a debtor not to be deemed insolvent at the time of making a voluntary conveyance of his property, he must retain property accessible to his creditors and subject to levy by execution, ample to pay all obligations existing at the time of such conveyance, whether they be due at the time of such conveyance or not." (c) "Because the evidence showed that . . Childs did not, at the time of the conveyance involved in this case, retain any money or effects accessible to creditors; and said charge was therefore not authorized by the evidence." (d) "The court charged the jury . . that in order for the obligations to be counted in determining whether sufficient assets were retained to pay them, they must be due at the time of the conveyance. Such an instruction was particularly prejudicial to movant, because the indebtedness to it had not matured at the time of the conveyance under attack."

■ Ground 6 complains of the charge: "That a debtor and husband may prefer one creditor, including his wife, over another, if in good faith and free from fraud of other creditors, and may convey property to such creditor, his wife, in settlement of a pre-existing debt, and the conveyance would be valid, unless it was a voluntary conveyance and the husband was insolvent at the time, or unless the intention of both was to hinder, delay, and defraud

other creditors in the collection of their debts, in which case, or either of such cases, the conveyance would be void." The criticisms of the charge were: (a) "The jury was thereby instructed that both the husband and wife must have the intention of hindering, delaying, and defrauding the other creditors in the collection of their debts, in order to render void a conveyance to the wife in settlement of a pre-existing debt to her; whereas the rule is that if the husband has that intention and the wife has reasonable ground of suspicion thereof, a conveyance of his property to her in settlement of a pre-existing debt to her is void." (b) "The jury was instructed that the intention must be to 'hinder, delay, and defraud,' whereas the law only requires an intention to 'hinder, delay, or defraud.'" (a) As to the first criticism, the language of the charge was substantially as alleged in the original petition as one ground of attack upon the conveyance, it being alleged that the deed was executed by Childs for the purpose and with the intention "to avoid paying the indebtedness due by him to your petitioner," which "intention and purpose . . was known to and concurred in by" his wife, thus omitting any charge as to "reasonable ground of suspicion" by the wife. A charge of the principle as substantially given by the judge, which omitted reference to "reasonable ground of suspicion," was approved in *Cowan* v. *Bank of Rockdale*, 159 *Ga.* 123 (4) (125 S. E. 194). The statute (Code, § 28-201 (2)) uses the words "without notice or ground for reasonable suspicion," and similar words were used in *Gill* v. *Willingham*, 156 *Ga.* 728 (6) (120 S. E. 108); *McLendon* v. *Reynolds Grocery Co.*, 160 *Ga.* 763 (129 S. E. 65). In the circumstances stated above, the charge complained of was not erroneous for the reason assigned. (b) As to the second criticism, the use of the word "and" in the phrase "hinder, delay, and defraud," etc., instead of the disjunctive "or" was not error in view of the immediately following words, "in which case, or either of such cases, the conveyance would be void." *Britten* v. *State*, 124 *Ga.* 783 (53 S. E. 99). This view is harmonious with the ruling in *Evans* v. *Coleman*, 101 *Ga.* 152 (28 S. E. 645). It was there held: "In the trial of an action by a creditor to set aside and cancel a fraudulent conveyance, it was inaccurate and therefore erroneous to charge that if the debtor made the conveyance with intention to 'delay, hinder, and defraud' his creditors, it would be void. The

acts voiding the conveyance should have been stated disjunctively. Stating them conjunctively imposed upon the creditor a greater burden than the law does." See also *Monroe Mercantile Co.* v. *Arnold*, 108 *Ga.* 449 (34 S. E. 176).

■ Ground 8 complains of the following instruction: "In this connection I charge you that fraud, being subtle in its nature, slight circumstances in family transactions may be sufficient to establish its existence; but even though slight circumstances may be sufficient to establish it, nevertheless you must be satisfied that it has been established by a preponderance of the evidence." Movant requested the court to charge that portion of the above quotation reading as follows: "In this connection I charge you that fraud, being subtle in its nature, slight circumstances in family transactions may be sufficient to establish its existence." The court, however, added the remaining portion of said charge, and movant contends that in charging, "but even though slight circumstances may be sufficient to establish it, nevertheless you must be satisfied that it has been established by a preponderance of the evidence," the court committed error. The charge was not erroneous, as contended, on the grounds: (a) "Said charge cast upon movant the burden of establishing fraud by a preponderance of the evidence; whereas in this case the burden rested upon the defendants to establish by a preponderance of the evidence that there was no fraud in the transaction." (b) "Said charge was by the addition above referred to made confusing and misleading, and tended to lead the jury to believe that although slight circumstances might be sufficient to establish the existence of fraud, nevertheless, before they could apply that rule, they must find that movant, by a preponderance of the evidence, had established the existence of fraud in the transaction." (c) "The . . addition made by the court to the charge requested by movant destroyed the force and effect of that portion of the charge that had been requested by movant, and movant was entitled to have its request given to the jury without any such addition or qualification." (d) "Said portion of the charge added by the court led, or could have misled, the jury into believing that the court was withdrawing the previous instruction that in a transaction between husband and wife the burden is upon the husband and wife to show that the transaction was fair."

■ Ground 10 complains of the following charge: "I have instructed you, gentlemen, as to this matter of hindering, delaying, and defrauding creditors, that Mrs. Childs must have had knowledge that that was . . Childs' purpose, if it was his purpose, or had reasonable cause to believe that it was his purpose. If she did not have that knowledge, or have reasonable cause to believe, then, so far as that contention is concerned, the transaction would be valid." This charge is assigned as erroneous "in that it instructed the jury that Mrs. Childs must have had knowledge or 'reasonable cause to believe' that . . Childs' purpose in making the conveyance to her was to hinder, delay, and defraud his creditors, otherwise the transaction would be valid; whereas the true rule is that the transaction is void if she had knowledge or grounds for reasonable suspicion, or reasonable cause to suspect that the purpose of her husband in making the conveyance was to hinder, delay, or defraud his existing creditors." While this charge uses the word "believe" instead of "reasonable cause to suspect," for reasons stated in division 7, supra, any inaccuracy in this respect is not cause for reversal.

■ Ground 13 complains of the refusal of a request to give the following in charge to the jury. "Now, you look to the evidence to ascertain the truth of those contentions. If you find that . . Childs was indebted to Mrs. Childs, but that by reason of his buying furniture, which she claims as hers by reason of its having been purchased with her funds, and that he with her knowledge and consent, express or implied, invested on the stock exchange in securities, upon which there was a loss; or with her consent, express or implied, invested in any other property upon which there was a loss, and that he turned over or transferred to her, at or about the time of the conveyance of the home place, other property, including the Goldburg and Adair notes and stocks and bonds in the safety-deposit box, and at or about that time furnished her funds with which to buy the land and construct a house at Highlands, North Carolina, and that those items aggregate the amount of any indebtedness to her, if you find that any such indebtedness existed, then I charge you that you would be authorized to find that there was no consideration, or no sufficient consideration, for the conveyance of the home place to Mrs. Childs, and you should find that that deed was void. You should also find

that deed to be void if you find that such sums were paid to Mrs. Childs, or invested in securities or property turned over to her, or put in her name, or claimed by her, if you do so find, aggregate an amount that left due to Mrs. Childs, if there was any sum left due to her, an amount which, added to the amount to ' . . Childs' indebtedness to the plaintiff, did not exceed the value of the home place; for the reason that a husband can not, as against his existing creditors, or any of them, even in payment of a bona fide indebtedness to his wife, and even though the conveyance be made solely to pay that indebtedness, and not with any intent to hinder, delay, ·and defraud his creditors, convey to her property which substantially exceeds in value the amount of such indebtedness to her. If, therefore, you find that . . Childs was indebted to Mrs. Childs, and, after crediting to that indebtedness such sums as you find, under the rules I have just given you, should be credited to that indebtedness, there was still left due her an amount substantially less than the value of the home place at the time of its conveyance to her, you should find in favor of setting that deed aside." This requested instruction did not state correct principles of law properly adjusted to the pleadings and the evidence, and was properly refused by the court.

 The evidence was sufficient to support the verdict. The court did not err in refusing a new trial.

<em>Judgment affirmed. All the Justices concur.</em>

ON MOTION FOR REHEARING.

BELL, Justice. I am compelled to dissent from the order denying the motion for a rehearing. After further examination of the record, I am convinced not only that the charges dealt with in divisions 7 and 9 of the opinion were erroneous but that the errors were of such materiality as to require a reversal. The motion for rehearing should be granted, and the judgment reversed. See *Evans* v. *Coleman,* 101 *Ga.* 152 (28 S. E. 645); *Nicol* v. *Crittenden,* 55 *Ga.* 497 (7); *Monroe Mercantile Co.* v. *Arnold,* 108 *Ga.* 449, supra; Shapiro *v.* Wilgus, 287 U. S. 348, 354 (53 Sup. Ct. 142, 77 L. ed. 355, 85 A. L. R. 128).