UNITED STATES of America

v.

Henry L. McMAHAN et al.

Civ. A. No. 18152.

United States District Court,
N. D. Georgia,
Atlanta Division.

April 15, 1975.

**1160**

John W. Stokes, Jr., U. S. Atty., Wm. A. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., Park T. Zimmerman, Tax Div., Washington, D. C., for plaintiff.

Somers & Altenbach, Atlanta, Ga., Joe W. Willis, Decatur, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This case was tried to the court without a jury on March 24 and 25, 1975. The trial resulted from a complaint authorized by the Attorney General of the United States at the request of the Commissioner of Internal Revenue to reduce certain alleged tax liabilities to judgment, to set aside an allegedly fraudulent conveyance against certain real property and to foreclose the Government's liens against said real property. The defendants, Henry L. McMahan and Jere Sewell McMahan, his wife, reside in Cumming, Georgia, within the Northern District of Georgia; the defendant Elizabeth W. Ferguson resides in Decatur, Georgia, within the Northern District of Georgia, and was made a party to this action pursuant to § 7403(b) of the Internal Revenue Code of 1954 (26 U.S.C. § 7403(b)); and the defendant Minnie Wallis a/k/a Minnie Wallis Jones and Mrs. Paul Jones) resides at 200 Franklin Road, Apt. W8, Atlanta, Georgia, within the Northern District of Georgia and is likewise made a party to this action pursuant to § 7403 (b) of the Internal Revenue Code of 1954.

In the latter part of 1968 or early 1969, the defendant Henry L. McMahan purchased a corporation known as Little River Farms, Inc. from K. E. Investments for the sum of $100.00. Little River Farms, Inc. was a corporation engaged in the processing of milk in and around the Atlanta area. It maintained some 32 retail outlets known as "Milk Jugs", which were carry-out type stores for milk and other items. At the time purchased and until some time in the middle of 1969, all of the capital stock of Little River Farms, Inc. was owned by the defendant Henry L. McMahan and the officers at various times were R. Murphy, President, Alton Hawk, Secretary, and Leon Smith, Treasurer. In the mid-part of 1969, the corporation was allegedly sold by defendant Henry L. McMahan to Messrs. Hooper and Brooks for a purported consideration of $5,000.00, and immediately following the acquisition of the corporation by Messrs. Hooper and Brooks, Henry L. McMahan was named President, Alton Hawk, Secretary and Leon Smith, Treasurer. The same parties also served on the Board of Directors along with Mr. Hooper. Henry L. McMahan was Chairman of the Board.

Obviously, from the date of acquisition by defendant Henry L. McMahan the corporation known as Little River Farms, Inc. was in a financial loss position. During the course of the year 1969, there were several Board of Directors' meetings at which the financial status of the corporation was discussed in general and the liability for employee withholding and F.I.C.A. taxes in particular. When the defendant Henry L. McMahan acquired Little River Farms, Inc. from K. E. Investments the seller gave to defendant McMahan a written statement to the effect that withholding and F.I.C.A. taxes had not been paid over to the Internal Revenue Service.

At some time in early 1969, Leon Smith, the Treasurer of Little River Farms, Inc., reported to defendant Henry L. McMahan, the President, that the taxes withheld from the wages paid to the employees of the company had not been paid over to the Internal Revenue Service; and in the Fall of 1969, defendant Henry L. McMahan hired a comptroller by the name of William Thurman to prepare and to maintain a current and up-to-date set of books and records. Thurman started work with Little River Farms on September 30, 1969.

About one month after Thurman began work with the company, it came

to his attention that the withholding and F.I.C.A. taxes were not being paid over and deposited with the Internal Revenue Service. Thurman reported this fact to Smith, the Treasurer, who, in turn, along with Thurman, discussed this matter with the defendant Henry L. McMahan and at this time Thurman acquainted defendant McMahan with the fact that no employee taxes had been paid over to the United States and that the company was delinquent. Despite this fact and the knowledge of defendant Henry L. McMahan of the delinquency of the employment taxes, no action apparently was taken to pay over said taxes at any time thereafter.

The by-laws of Little River Farms, Inc. provided that the duties of the president " . . . shall be a member of the Board of Directors, shall preside at all meetings for which a chairman is not designated, shall be the chief executive officer and shall have general supervision and management of the affairs of the corporation. The president shall, in the absence or disability of the chairman of the Board of Directors perform any duties herein or otherwise authorized for chairman of the Board of Directors." Defendant Henry L. McMahan was the chief executive officer of the corporation at all times and it was he who signed income tax returns, had check signing authority, as well as the authority to hire and fire employees.

In early October, 1969, agents of the Internal Revenue Service visited the plant of Little River Farms, Inc. and made demand for the payment of withholding and F.I.C.A. taxes for the last quarter of 1968. At the direction of Henry L. McMahan, the sum of $19,000.-00 was paid over to the Internal Revenue Service. At this same time, defendant Henry L. McMahan was advised by agents of the Internal Revenue Service as to the necessity for keeping the taxes current and of the personal liability that might be incurred by responsible officers of the corporation, including defendant Henry L. McMahan, in the

event the corporation did not pay over said taxes. At this meeting, defendant McMahan advised the Internal Revenue Service that at that time employment taxes were current. Throughout this period of time, Leon Smith was the treasurer of the corporation and in such capacity it was his function to write checks and disburse the funds of the corporation with respect to current bills, deferring to defendant Henry L. McMahan with respect to payments for such items as milk purchased and taxes which might be due or owing. Alton Hawk was the secretary of the corporation during this same period of time.

On or about March 7, 1970, the Internal Revenue Service sent personnel to the plant of Little River Farms, Inc. to make demand for the withholding and F.I.C.A. taxes for the second, third and fourth quarters of 1969. At that time, the agents of Internal Revenue Service notified defendant Henry L. McMahan and Leon Smith of their intent to seize the assets of the corporation if the taxes due and owing were not forthcoming immediately. Although so notified in March of the impending closing down of the corporation, no action was taken to pay the taxes even though defendant Henry L. McMahan had informed the agents that he would attempt to do so, and the corporation was consequently closed down by Internal Revenue Service on or about April 15, 1970. On May 10, 1970, the assets of the corporation were sold at public auction and the sum of $20,800.00 was derived from such sale, which sum was credited to the delinquent account.

Agent Eugene Towery, the Revenue Officer in charge of the matter involving Little River Farms, Inc., permitted the perishable products of the corporation to be sold first and took inventory with the complete cooperation of defendant Henry L. McMahan. In fact, defendant Henry L. McMahan was the sole officer and member of the board still available to assist the Internal Revenue

Service as well as to wind up the affairs of the corporation.

Subsequent to the sale at public auction of the assets of the corporation, defendant Henry L. McMahan as chief executive officer of the corporatin, authorized the bringing of a suit against the United States, Civil Action No. 13837, in the United States District Court for the Northern District of Georgia, for alleged irregularities in the course of such sale.

In mid-October of 1971, the Commissioner of Internal Revenue made responsible officer assessments against defendant Henry L. McMahan as follows:

| TYPE OF TAX | TAXABLE PERIOD | DATE OF ASSESSMENT AND NOTICE AND DEMAND | UNPAID ASSESSED BALANCE | DATE NOTICE OF LIEN FILED IN FORSYTH COUNTY, GA. |
|---|---|---|---|---|
| WH–FICA | 2 Qtr., 1969 | 10–15–71 | $13,072.22 | 11–16–71 |
| WH–FICA | 3 Qtr., 1969 | 10–15–71 | 22,117.98 | 11–16–71 |
| WH–FICA | 4 Qtr., 1969 | 10–15–71 | 17,982.11 | 3–17–72 |
| WH–FICA | 1 Qtr., 1970 | 10–15–71 | 17,753.24 | 11–16–71 |
| WH–FICA | 2 Qtr., 1970 | 10–15–71 | 2,116.26 | 11–16–71 |
| | | TOTAL | $73,041.81 * | |

Prior to February 23, 1970, the defendant Henry L. McMahan was the owner of a parcel of real estate located at Route 5, Cumming, Forsyth County, Georgia, more accurately described as follows:

All that tract or parcel of land lying and being in the 14th District and 1st section of Forsyth County, Georgia, and land lot 556, being in unit 1 of Deer Creek Subdivision, and being more particularly described as follows:

BEGINNING at a point on Lanier Drive where Lots 1 and 2 join; thence southwesterly along line of Lots 1 and 2 for a distance of 266 ft.; thence southerly along U. S. Government property a distance of 90 ft.; thence North 89 degrees, 50 minutes East or a distance of 50 ft. along U. S. Government property; thence North 41 degrees, 50 minutes East or a distance of 319.5 ft. to Lanier Drive; thence Northwesterly along Lanier Drive for a distance of 75 ft. to the point of beginning.

On February 23, 1970, the defendant Henry L. McMahan transferred the above described property to his wife, Jere Sewell McMahan, by warranty deed. The deed expressed as consideration the sum of "$10.00 and other valuable consideration" and did not have affixed thereto any state transfer tax stamps. At the time of conveyance from defendant Henry L. McMahan to defendant Jere Sewell McMahan, his wife, his assets, in addition to the real property above described, consisted of a joint bank checking account with an average balance ranging between $100 and $1,000, a Chevrolet automobile, some stock in Little River Farms, Inc. which was worthless, and apparently some stock in an export-import operation which apparently was likewise worthless. He owned no accounts receivable, no machinery or equipment and had no household possessions other than his personal effects. In fact, at a conference with Internal Revenue Officers on or about November 15, 1971, defendant McMahan advised that he had no assets other than an automobile which had a value of $3,000.00 but was encumbered to the extent of $3,200.00, and at the trial defendant McMahan testified that his fi-

* This figure does not include accrued, but unassessed statutory additions.

nancial condition between February 23, 1970 and November 15, 1971 had deteriorated only somewhat.

The evidence is altogether unclear with respect to the value of the subject property on February 23, 1970. However, it is undisputed that defendant Henry L. McMahan agreed to pay $12,500.00 for the property when purchased in 1966 and apparently some additional $20,000.00 was expended in improving the property, consisting of advances or loans, made by defendant McMahan's sister, defendant Minnie Wallis, and approximately $4,600.00 additionally expended by his wife, defendant Jere Sewell McMahan. In addition, on April 14, 1972, defendant Jere Sewell McMahan, gave her affidavit for the purpose of posting a property bond that she owned the subject property and that it had a $5,000.00 first mortgage balance against it and a $25,000 equity above that mortgage balance, when, in fact, as known then by Mrs. McMahan, it had against it an additional $9,600.00 mortgage in favor of Mrs. Wallis. Apparently, although again not clear, the value of the property on February 23, 1970 was at least $37,100.00 based solely on the amount invested. At the time of the conveyance on February 23, 1970, the property was encumbered by recorded mortgages in favor of Elizabeth W. Ferguson in the original principal amount of $9,500.00, recorded December 19, 1966, and in favor of defendant Minnie Wallis in the principal amount of $9,600.00, dated February 16, 1970, and recorded on May 1, 1970. On February 23, 1970, the outstanding balance of the loan in favor of Elizabeth W. Ferguson was approximately $3,000 to $5,000.

On or about February 11, 1975, defendant Elizabeth W. Ferguson filed a voluntary dismissal of her answer and counterclaim to this action on the ground that her mortgage, above referred to, had been paid in full. The defendant Minnie Wallis, in addition to the $9,600.00 indebtedness secured by the mortgage referred to previously, had loaned certain other funds to Henry L. McMahan (presumably to improve the property), and, in return, received promissory notes which she still holds. The defendant Jere Sewell McMahan received an inheritance of approximately $11,600.00 in September of 1968 and expended some of these funds for improvements to the property. As of the date of the transfer of the property, defendant Jere Sewell McMahan gave no present consideration to defendant Henry L. McMahan for the transfer. She claims, however, that all of her inheritance of $11,600.00 went to defendant Henry L. McMahan in the form of approximately $4,600.00 expended on improvements to the realty and $7,000.00 by means of a forgiveness of a debt which was owed by her husband, defendant Henry L. McMahan, to Mrs. McMahan's benefactor. Following the transfer of the real property from defendant Henry L. McMahan to defendant Jere Sewell McMahan, defendant Henry L. McMahan continued and still continues to live in the property in dispute and he and his wife continue to make the property their home with necessary expenses attendant thereto being paid by them together. Defendant Jere Sewell McMahan is now employed.

The questions to be decided by the court are: (1) was defendant Henry L. McMahan personally liable for the payment of employee taxes pursuant to § 6672 of the Internal Revenue Code of 1954 (26 U.S.C. § 6672); (2) was the conveyance of the subject property from defendant Henry L. McMahan to defendant Jere Sewell McMahan made for the purpose of hindering, delaying or defrauding creditors with such intention known at the time to defendant Jere Sewell McMahan or was the transaction bona fide based on a valuable consideration, without notice or ground for reasonable suspicion that it was made to hinder, delay or defraud creditors; and (3) if the conveyance was voluntary, as opposed to being based upon a valuable

consideration, was it made by the defendant Henry L. McMahan at a time when he was insolvent.

## THE PERSONAL LIABILITY OF DEFENDANT HENRY L. McMAHAN

The jurisdiction of this court over the parties and the subject matter is clear.

■ Defendant Henry L. McMahan, as the president and chairman of the board of Little River Farms, Inc., was the chief executive officer of that corporation and was responsible for its day-to-day operations. As the president and chairman of the board of Little River Farms, Inc., he was advised as early as May, 1969 that the withholding and F.I.C.A. taxes which had been withheld from the employees of Little River Farms, Inc. had not been deposited or paid over to the United States. This condition was made known to him subsequently by his subordinates and continued to be made known to him up until the time that the Internal Revenue Service closed down the operations of the corporation in April of 1970. Even though advised and apprised of the existence of the tax liability, defendant Henry L. McMahan totally and willfully failed to collect and to truthfully account for and pay over the taxes imposed by the Internal Revenue Code of 1954 with respect to such employment taxes. Accordingly, the United States is entitled to a judgment for the tax liabilities imposed by § 6672 of the Internal Revenue Code of 1954 against defendant Henry L. McMahan in the sum of $73,041.81 plus interest and accrued penalties as allowed by law.

## THE TRANSFER OF THE REAL ESTATE FROM DEFENDANT HENRY L. McMAHAN TO HIS WIFE

Section 28–201 of the Code of Ga. Ann., as amended, provides, in pertinent part, as follows:

The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz:

. . . . . .

2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.

3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance.

■ When a conveyance between husband and wife has been challenged by a creditor, the burden is upon the husband and wife to prove their good faith.

The subject property was purchased in 1966 by defendant Henry L. McMahan for the sum of $12,500.00, which was paid for by a loan of $4,000.00 provided by his sister, Mrs. Minnie Wallis, and the giving of a purchase money note and mortgage for the balance. In 1968, defendant Jere Sewell McMahan inherited approximately $11,600.00 from her niece, which bequest was satisfied by the payment to her of approximately $4,600.00 in cash and the forgiving of a $7,000.00 debt of defendant Henry L. McMahan to the deceased benefactor. Over a period of several months, most, if not all, of the $4,600.00 cash was used by defendant Jere Sewell McMahan for improvements to the subject real estate. It is the $11,600.00 inheritance, which was used in part to improve the property and to cancel a debt of defendant Henry L. McMahan to the benefactor which defendant Jere Sewell McMahan contends was the basis for the valuable consideration for the transfer of the property from her husband to her. Mrs. McMahan contends that at the time of the transfer from her husband to her she had no knowledge or suspicion of the

financial troubles of the corporation, nor of her husband's liability for unpaid taxes incurred by the company. It is not strongly disputed by the Government that Mrs. McMahan had no knowledge or clear suspicion of the tax liability of the corporation or the possible liability of her husband as president of the corporation at the time of the transfer. There is, however, considerable dispute as to whether or not the purported inheritance of $11,600.00 constituted a valuable consideration for the transfer and whether or not defendant Henry L. McMahan was solvent at the time of the transfer, or made insolvent as to his creditors by virtue of the transfer.

In Georgia, a jury charge to this effect has been held not erroneous:

" . . . A debtor and husband may prefer one creditor, including his wife, over another, if in good faith and free from fraud of other creditors, and may convey property to such creditor, his wife, in settlement of a pre-existing debt, and the conveyance would be valid, unless it was a voluntary conveyance and the husband was insolvent at the time, or unless the intention of both was to hinder, delay, and defraud other creditors in the collection of their debts, in which case, or either of such cases, the conveyance would be void."

New England Mutual Life Insurance Co. v. Childs, 185 Ga. 198, 203, 194 S.E. 561, 566 (1937). However, that charge has been criticized in a later decision by the Supreme Court of Georgia in the case of Cunningham v. Avakian, 192 Ga. 391, 392, 15 S.E.2d 493 (1941). In *Cunningham,* the court held that pursuant to the applicable statute, it was not necessary that both the husband and the wife join to hinder, delay and defraud other creditors in the collection of their debts, if it can be shown that the wife had reasonable ground to suspect that her husband's purpose was to hinder, delay and defraud other creditors in the collection of their debts.

The Georgia cases stand for the proposition that such conveyances will not be set aside as fraudulent unless it is shown that the conveyance was made with the intention to defraud creditors and the wife is shown to have had knowledge of such intent or to have some reasonable notice or suspicions of such intent. The basis for this proposition and the rationale behind the same is that the wife, having loaned money to her husband, is a general creditor the same as another and the husband may prefer payment to his wife over any other unsecured creditor, paying her in property or money, provided the property so conveyed be reasonably proportioned to the amount of the debt. Krueger v. MacDougald, 148 Ga. 429(4), 96 S.E. 867 (1918); Gill v. Willingham, 156 Ga. 728(11), 120 S.E. 108 (1923); Strickland v. Davis, 184 Ga. 76, 190 S.E. 586 (1937).

In *Strickland,* however, at page 588, the court held:

In the instant case, however, there was no evidence of a present consideration. On the contrary, it appeared without dispute that the only consideration, if any, was a past indebtedness owed by the husband to the wife, and apparently the verdict turned upon the bona fides of the husband's preference to his wife as a creditor. As to such an issue it has been held that 'while the husband has the right to prefer his wife to other unsecured creditors and pay her as well with property as with money, provided the property conveyed to the wife in satisfaction of her debt is reasonably proportioned to the amount of the debt, the conveyance by him to her of property in a sum grossly in excess of the amount due her amounts to a conveyance made with intent to delay and defraud creditors, this being true notwithstanding both husband and wife claim to have acted in good faith in the transaction; and such conveyance will be set aside as a fraud upon other

creditors of the husband.' (citations omitted).

■ Defendants, Mr. and Mrs. McMahan, have failed to convince the court of the bona fides of the transaction so as to support the transfer of the property from him to her. And, they have failed to convince the court that the satisfaction of his debt (evidenced by her inheritance of $11,600.00) was reasonably proportioned to the value of the property conveyed less an outstanding balance due the first mortgagee at the time of the conveyance of $3,000.00 to $5,000.00 and the sum of $9,600.00 allegedly owed defendant Henry L. McMahan to his sister, Mrs. Minnie Wallis. The subject property had a value at the time of the sale of at least $37,100.00 not considering that the property is situated in a highly desirable and much sought after area of metropolitan Atlanta and may have enhanced and appreciated in value prior to the time of the conveyance. Deducting therefrom $12,600.00 to $14,600.00 representing mortgage balances on said property, would leave an equity of between $20,500.00 and $22,500.00. Deducting Mrs. McMahan's inheritance of $11,600.00 from the equity leaves a difference of between $8,900.00 and $10,900.00, or considerably more than the amount of the purported consideration for the transfer.

There is considerable doubt, considering all of the facts and circumstances and the time interval between the date of inheritance, the date of the transfer, and the notice and knowledge of defendant Henry L. McMahan as to his personal liability, that the sum claimed to represent a debt was in fact that. It appears to the court that it was nothing more than any wife would have done under similar circumstances. There was no written evidence of any debt, such as a promissory note, letter or other document, although there was testimony as to Mrs. McMahan's insistence upon having the property put in her name because of a bad experience in California years previously whereby their home had been lost because of Mr. McMahan's failure to provide funds to Mrs. McMahan. There is nothing in the record to suggest that the expending of the money on the property was any more than a gift to her husband. The details of why there was a forgiveness of $7,000.00 owed by defendant Mr. McMahan to Mrs. McMahan's benefactor are unclear, but, at most, the transfer of the property from the husband to the wife was a condition for her reconciliation after a period of separation and to avoid a repeat of the California experience, if not done clearly to defraud the Government.

■■ Great inadequacy of consideration in the transfer of property creates strong inferences that the transfer was fraudulent. *See* Hardin v. Baynes, 198 Ga. 683, 32 S.E.2d 384 (1944); Martin v. Approved Ban Credit Corp., 224 Ga. 550, 163 S.E.2d 885 (1968). While inadequacy of price alone is not sufficient grounds to set aside a conveyance in a court of equity, that circumstance, taken in consideration and in connection with others of a doubtful and suspicious nature, may afford such a vehement presumption of fraud so as to authorize the court to set it aside. Lasater v. Petty, 220 Ga. 592, 140 S.E.2d 864 (1965).

It is likewise clear to the court that at the time of the conveyance defendant Henry L. McMahan was insolvent, or, if not insolvent at the time, the transfer of the real estate, which was his only asset of consequence, rendered him insolvent as to the Government of the United States.

Having determined that the conveyance of the subject property from defendant Henry L. McMahan to his wife, Jere Sewell McMahan, was not based upon a valuable consideration, and, if so, such consideration was grossly inadequate, and that at the time of such conveyance or as the result of same Henry L. McMahan was insolvent, the court concludes that such conveyance was fraudulent under the laws of the State of Georgia within the meaning of § 28-201 of Ga.Code Ann., as amended, and,

as such, is hereby set aside as in fraud of the United States. The liens and claims of the United States attaching to said property are hereby established and may be foreclosed and the property sold by an officer of this court, with the proceeds of said sale distributed to Mrs. Minnie Wallis Jones and the United States of America.

Accordingly, the Clerk of Court is hereby ordered to enter judgment for the Government of the United States against Henry L. McMahan for tax liabilities pursuant to § 6672 of the Internal Revenue Code of 1954 in the sum of $73,041.81 plus interest and accrued penalties as allowed by law; and with respect to the defendants and the subject property as heretofore directed by the Court.

It is so ordered.