THE COMMERCIAL NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALTER P. STORY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHERINE F. STORY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS B. STORY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NELSON STORY, III, AND CHARLES VANDENHOOK, AS ADMINISTRATORS OF THE ESTATE OF NELSON STORY, JR., DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66959, 66960, 66961, 66962, 66963.

Promulgated June 25, 1937.

*George Y. Patten, Esq., Walter S. Hartman, Esq.,* and *Justin M. Smith, Esq.,* for the petitioners.

*Elden McFarland, Esq.,* for the respondent.

240

242

OPINION.

Murdock: The first transfer in point of time which the Commissioner has determined was in contemplation of death, was the transfer by the decedent to his son Thomas of certain bonds of the par value of $192,500. That transfer was made in 1917 about nine years before the decedent died, at a time when he was about seventy-nine years of age. The decedent, up to that time, had always been a man of unusual strength and vigor. His health, aside from some minor chronic ailments, had been excellent. He was an active man. His

advanced age is the only circumstance which might indicate that this transfer was made in contemplation of death. The Commissioner points also to two letters written about eleven years previously, and argues that they indicate that the decedent was then contemplating death. However, these letters were written so long before the transfer in question and are so ambiguous as to meaning, that they are of little evidentiary value. On the other hand, the real purpose of this gift is quite apparent. The decedent in the past had given substantial amounts to aid his sons in business. His son Thomas was making money in the sheep business. It appeared that through expansion more money could be made. The decedent gave his son the bonds in question so that this expansion might take place. The gift was complete. It was made for a purpose connected with life rather than with death, and the Commissioner erred in including the value of the bonds in the decedent's gross estate.

Next in point of time were a series of transfers which the petitioner made on December 14, 1923. One of these transfers was to this same son Thomas. Prior to 1923 Thomas had lost not only the bonds which his father had given him in 1917, but all of his own property and some of his wife's property. His financial condition distressed his father. The father wanted very much to give his son some immediate help so that the son could support his family and again get started in business. For this purpose he made on December 14, 1923, an absolute and complete gift to his son of certain properties. The value of the properties at that time does not appear, but at the time of the decedent's death these properties had a value of $60,000.88. The Commissioner is able to marshal stronger evidence in support of his conclusion that this transfer was made in contemplation of death than he was able to marshal in the case of the transfer made in 1917. But the evidence which the petitioner relies upon to show that the transfer was made for a purpose connected with life, rather than with death, is just as strong as the similar evidence relating to the transfer made in 1917. The decedent at the time of this transfer was past eighty-five years of age. Although he was still unusually vigorous and active for a man of his years, nevertheless he had slowed up considerably. He had been confined to his home in the care of a nurse for a number of weeks during the fall of 1923 as a result of the removal of a carbuncle. He took some steps about this time to dispose of his home, and there is other evidence which has some tendency to support the Commissioner's determination. The weight of the evidence, however, is that this transfer was not made in contemplation of death.

The other transfers made on December 14, 1923, were made by the decedent to a bank in trust to pay the income from the trust

property to the decedent and his wife for life, and then to pay all of the trust funds of the one trust to Katherine, the wife of Thomas, and all of the funds of the other trust to Nelson Story, Jr. The facts leading up to these transfers have been set out in detail in the findings of fact and need not be repeated. Suffice to say that the decedent, in transferring these funds, was merely carrying out his earlier agreement to hold amounts received from his sons under those earlier agreements in trust, and eventually to return those funds to the sons. Thomas preferred that his share should be paid. to his wife. After the decedent's death, suits were instituted in the courts of Montana by the administrator of the estate of the decedent and also by Rose Story Hogan. The plaintiffs challenged all of the transfers made by the decedent on December 14, 1923, and sought to recover from the defendants the properties transferred. Some of these proceedings were taken to the court of last resort of the state. The court, in each instance, upheld the transfers and held that the properties transferred in trust subject to a life estate, had at all times been the property of the sons and had not been the property of the decedent. *Roecher* v. *Commercial National Bank*, 87 Mont. 570; 289 Pac. 388; *Roecher* v. *Story*, 91 Mont. 28; 5 Pac. (2d) 205. It may be that we are bound by those decisions on the question of the ownership of the property which was placed in the trusts on December 14, 1923. Cf. *United States* v. *Robbins*, 269 U. S. 315; *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 100; *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5, affirming 31 B. T. A. 1192. If, however, we are at liberty to draw our own conclusion from the evidence in this case, it is that the decedent was merely a trustee of the property, who transferred bare legal title to another trustee. Cf. *Fidelity & Columbia Trust Co.* v. *Lucas*, 7 Fed. (2d) 146. Since the property belonged to the sons and not to the decedent, it could not be the subject of a transfer within the meaning of section 302 of the Revenue Act of 1926.

The decedent on February 23, 1924, transferred to his son Walter and to his daughter all the rest of his property. The Commissioner included in the gross estate the value at the time of death of all of the property transferred on February 23, 1924. The petitioners have raised no issue in their pleadings challenging his action in regard to the properties transferred to the daughter. Nevertheless, they argue in their briefs that the transfers to the daughter were improperly included in the gross estate. Since that issue is not raised by the pleadings, it need not be decided. However, the transfers to the daughter were just like the transfers to the son on that date. The transfers to the son were in contemplation of death, and, if

the transfers to the daughter were properly in issue, the holding would have to be that they likewise were in contemplation of death. The record fails to show any purpose which the decedent might have had in making those transfers which would be inconsistent with the making of a transfer in contemplation of death. That is, no purpose for the transfers appears which would have to do with continuing life rather than impending death. On the contrary, there is affirmative evidence in the record indicating that these particular transfers were made in contemplation of death. The transfers were made shortly after the death of the decedent's wife. He was depressed and nervous following her death and was confined to his home for two months constantly attended by nurses. He revoked his will on the same day that he made these transfers by an instrument in the following terms:

Having previously disposed of my personal property, I am this day disposing of my real estate, therefore leaving no will. Any will, or wills heretofore made by me are hereby revoked, nullified and made void.

The evidence as a whole certainly fails to show that the Commissioner erred in including the transfers of February 23, 1924, in the decedent's gross estate.

It is apparent from the foregoing discussion that there is a deficiency in estate tax and, consequently, it is necessary to consider the alternative issues raised by each petitioner. The alternative issues are the same in principle. Each petitioner contends that his liability as a transferee is limited to the tax upon the particular property received by him. There are numerous decisions, however, to the effect that the liability of transferees is joint and several, and that the liability of each transferee is limited only to the value of the transferred property received by that transferee. *Phillips* v. *Commissioner*, 283 U. S. 589; *Grand Rapids National Bank*, 15 B. T. A. 1166; *Eleanor Lansburgh, Administratrix*, 35 B. T. A. 928.

There is no question about the values. This really disposes of all of the issues raised. However, there is another matter that demands discussion despite the fact that no issue is raised by the petitioners. The point is that the Commercial National Bank, Katherine F. Story, Thomas B. Story, and Nelson Story, Jr., are not liable as transferees because none of them received any property properly included in the decedent's gross estate. The property which came to three of those petitioners was property placed in trust by the decedent on December 14, 1923. It has already been held that that property was not property of the decedent and was not properly included in his gross estate. The transfers to Thomas were not in contemplation of death. Thus he received no part of the

decedent's gross estate. Walter P. Story received property, properly included in the gross estate, exceeding in value, at the time of the decedent's death, the amount of the deficiency with interest.

Reviewed by the Board.

> *Decision of no transferee liability will be entered in the cases of the four petitioners, and decision will be entered under Rule 50 in the case of Walter P. Story.*