## COMMISSIONER OF INTERNAL REVENUE v. HENDERSON'S ESTATE et al. SAME v. HENDERSON.
### No. 11109.

Circuit Court of Appeals, Fifth Circuit.

Feb. 22, 1945.

Maryhelen Wigle, Sewall Key, A. F. Prescott, and Ernest R. Mortenson, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Revenue, and Claude R. Marshall, Sp.Atty., Bureau of Internal Revenue, both of Washington, D.C., for Commissioner of Internal Revenue.

C. J. Batter, of Washington, D. C., for respondents.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

These are income tax cases. The question in each is whether the taxpayer was entitled to a deduction under Section 23(b) of the Revenue Act of 1938 for interest paid on a deficiency in estate taxes assessed against the succession of Ellen H. Henderson.

The issue developed from these facts: Hunt Henderson was executor and residuary legatee of Ellen H. Henderson, who died in 1935. Succession proceedings were instituted in Louisiana, where all parties resided; the administration was completed

---

and the estate closed in January, 1938. As residuary legatee, Hunt Henderson received large sums from the succession, and all properties of the succession were fully distributed. After the discharge of the executor, a deficiency in estate taxes was determined to be due by the succession. This obligation being paid by Hunt Henderson in 1938, he and his wife in their respective tax returns for that year, being partners in their marital community, each deducted one-half of the amount paid for interest accruing thereon after the property had been distributed.

■ Section 23(b), supra, provides that in computing net income there shall be allowed as deductions all interest paid or accrued on indebtedness.[1] Such deductions may not be taken unless the interest was owed upon an indebtedness of the taxpayer.[2] The Commissioner disallowed the deductions on the ground that the estate tax debt was an obligation of the succession, not the personal indebtedness of Hunt Henderson. Appellees contend, and the Tax Court held, that Hunt Henderson became personally liable as transferee for the payment of the estate tax remaining unpaid at the time he came into possession of the property as residuary legatee. The ultimate question before us, therefore, involves the character of the liability of the transferee for the payment of the assessment. If it was a personal liability, the deductions may have been proper; but if as transferee he held as trustee assets belonging to another, his liability was only to disgorge that which he held as fiduciary.[3]

■ Section 316(a) (1) of the Revenue Act of 1926 provides that the liability, at law or in equity, of a transferee of property of a decedent for estate taxes and interest shall be assessed, collected, and paid, in the same manner as a deficiency.[4] The Tax Court apparently construed this statute to create a personal liability against the transferee, and on that ground decided in favor of the taxpayers;[5] but the statute does not attempt to declare, define, limit, or alter in any way, the substantive law relating to the liability of a transferee. It simply provides a summary administrative remedy for the enforcement of that liability, whatever it may be.[6]

■ There are statutes fixing personal liability upon the executor if he pays other debts before he satisfies those owing to the United States,[7] and imposing personal liability for unpaid estate taxes upon transferees of gifts in contemplation of or taking effect at death, and on the specific beneficiary of a decedent's insurance contract,[8] but this was no such proceeding. Here the Commissioner sought to enforce no statutory substantive rights. He followed the summary remedy provided by Section 316(a) (1), supra, in lieu of filing a suit in equity to require the transferee to disgorge that which he held as trustee. The equitable right arising in equity in favor of the Government does not impose a personal liability upon the transferee; his obligation is of a character materially different. His liability is purely secondary; he owes no duty of any kind until the Government has exhausted all remedies against the estate, unless the attempted enforcement of such remedies would be vain and useless.[9] The action against him is in the nature of a proceeding in rem, and he cannot be forced to disgorge more than he has received from the primary obligor.[10] In

[1] 26 U.S.C.A. Int.Rev.Code, § 23(b).

[2] Scripps v. Commissioner, 6 Cir., 96 F.2d 492, certiorari denied 305 U.S. 625, 59 S.Ct. 86, 87, 83 L.Ed. 400.

[3] Koch v. United States, 10 Cir., 138 F.2d 850.

[4] 26 U.S.C.A. Int.Rev.Code § 900 (a) (1).

[5] Its decision was expressly based on the opinion in Green v. Commissioner, 3 T. C. 74.

[6] United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; Baumgartner v. Commissioner, 9 Cir., 51 F. 2d 472; Paul, Federal Estate and Gift Taxation, Vol. 1, p. 764.

[7] Revised Statutes, § 3467, 48 Stat. 760, 31 U.S.C.A. § 192.

[8] 26 U.S.C.A. Int.Rev.Code, § 827(b).

[9] Oswego Falls Corp. v. Commissioner, 26 B.T.A. 60; Id., 2 Cir., 71 F.2d 673; Coffee Pot Holding Corp. v. Commissioner, 5 Cir., 113 F.2d 415; Alex Harjo v. Commissioner, 34 B.T.A. 467; Paul, Federal Estate and Gift Taxation, Vol. 1, p. 766.

[10] Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; Baumgartner v. Commissioner, 9 Cir., 51 F.2d 472; Koch v. United States, 10 Cir., 138 F.2d 850; Commercial National Bank v. Commissioner, 36 B.T.A. 239; Paul, Federal Estate and Gift Taxation, Vol. 1, p. 768.

essence, the liability of the transferee that was here enforced was based upon the fundamental principle that equity will not permit one to hold property belonging to an insolvent beyond the reach of creditors of the insolvent.[11] Since the liability and the remedy are so characterized, it is obvious that the transferee neither owed the debt nor paid it. The indebtedness remained the obligation of the transferor, and it was discharged with funds that belonged to the transferor but were held in trust for him or his creditors by another.

For these reasons we conclude that the interest was not paid upon an indebtedness of the taxpayers within the terms of Section 23(b). The decisions of the Tax Court are reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (concurring specially).

If the property taken by the transferee had not been sufficient to pay the interest assessment, and the taxpayer had had to pay it out of his own funds, I should agree with the Tax Court that the taxpayer was personally liable for the interest and that in paying it he paid a debt entitling him to the deduction he claimed. A transferee of property, of a value sufficient only to pay a tax charged on it, cannot take it and by withholding payment of the tax get the use of the property free of liability for interest by the simple expedient of claiming that the interest was not a debt of his but of the succession, and the succession being insufficient to pay it, the interest is not collectible. No such facts exist here, however. The property the transferee took was ample in value to pay both the original tax and the interest assessed upon it. The assessment was made against the succession. To get it, the Commissioner pursued not the transferee personally but the property of the succession in his hands. In these circumstances, the payment of the interest was not the payment by the transferee of a debt due by him, and he was not entitled to a deduction on account thereof. I, therefore, concur in the judgment of reversal.

---

11. Some authorities consider that the procedure brings into play the doctrine of fraudulent conveyances, see 22 Ill. Law Rev. 233, 257, 258; but the trust-fund doctrine seems better to fit the Con- gressional intent. Cf. Baumgartner v. Commissioner, supra, Koch v. Commissioner, supra, and House Conference Reports, No. 356, 69th Cong., 1st Sess., pp. 42–45, 49–50.