COMMISSIONER OF INTERNAL REVE-
NUE v. BREYER (two cases).

SAME v. VAN BOMEL.

KOPPERS CO. v. COMMISSIONER OF IN-
TERNAL REVENUE.

COMMISSIONER OF INTERNAL REVE-
NUE v. KOPPERS CO.

Nos. 8683–8685, 8708, 8709.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 8, 1945.
Decided Aug. 31, 1945.

John E. McClure, of Washington, D.C. (O. H. Chmillon, Edward L. Updike, Maude Ellen White, and Miller & Chevalier, all of Washington, D. C., on the brief), for Koppers Co.

Carlton Fox, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Bernard Chertcoff, Sp. Assts. to Atty. Gen., on the brief), for Commissioner in all cases.

Joseph Gilfillan, of Philadelphia, Pa., for Breyer and others.

Before GOODRICH and McALLISTER, Circuit Judges, and GIBSON, District Judge.

McALLISTER, Circuit Judge.

These cases, while varying in factual background, present a common question, and are, accordingly, dealt with in the same opinion.

### Breyer Cases

Henry W. Breyer died testate March 5, 1936, survived by his wife, son, and daughter. Executors of deceased's will were the widow, son, Girard Trust Company, and Wilber F. Scott.

Some five years before his death, decedent entered into three separate contracts with his wife, son, and daughter, granting them the right to purchase 50%, 25%, and 25%, respectively, of all the stock of the Henry W. Breyer Company owned by him at the time of his death, at the price of $25 per share. Five months after his death, his widow, son, and daughter, paid to the Executors of his will $200,000, $100,000, and $100,000, respectively, and received therefor 8,000, 4,000, and 4,000 shares of the company's stock. On the following day, August 6, 1936, the Executors filed an estate tax return for the estate of the deceased, and paid estate tax due thereon of $2,675,396.33.

However, an additional federal estate tax was thereafter assessed by the Commissioner, based on the inclusion in the estate of the 16,000 shares of the company's stock (which had theretofore been received by the widow and two children for the aggregate payment of $400,000) at their full market value—and of various gifts made in contemplation of death. Pursuant to such assessment, the Commissioner, on July 23, 1938, mailed to the Executors deficiency notice showing deficiency of $10,732,916.16.

Subsequently, on the filing of a petition by the Executors with the Board of Tax Appeals for redetermination of the deficiency, a stipulation was entered into between the Breyers, the Executors, and the Commissioner, in which the tax deficiency was determined to be $6,036,191.85 (including an allowable credit for state taxes in the amount of $1,751,264.63). This stipulation was conditioned upon the payment of the aforementioned federal and state taxes with interest, by the Executors, and the widow and children of the deceased in manner as follows: the Executors, to pay $900,788.63 with interest; the widow, $2,-567,701.61 with interest, and each of the two children, $1,283,850.81 with interest—each of the latter, in satisfaction of his "liability at law and in equity as a transferee of the assets of the decedent's estate."

These sums were paid in accordance with the stipulation. Thereafter, the Executors paid to the trustees of the three trusts created by the will of the deceased for the benefit of the widow and two children, a total of $3,694,742.55, the last of such payments being made in October, 1939. Upon making such final payment, there remained no more assets of the estate in the hands of the Executors.

In their income tax returns for 1938 and 1939, the widow, the son, and the daughter, claimed as deductions, the sums paid as statutory interest on the deficiencies in the aforesaid estate taxes under Section 23(b) of the Revenue Act of 1938, Section 23(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(b), which provides that in computing net income for income tax, there should be allowed as deductions all interest paid or accrued within the taxable year on indebtedness. The Commissioner disallowed the deductions, and determined deficiencies accordingly. On appeal, the Tax Court held that the deductions were allowable and reversed the Commissioner's determination; and the Commissioner here asks review of such decision.

### Koppers Cases

Koppers Company, as sole stockholder, and as transferee, received in liquidation all of the assets of several corporations. During the taxable year of 1938, the company paid deficiencies in taxes of such corporations for prior years and interest thereon.

Claiming that it was liable for the tax deficiencies of the above mentioned corporations, the company contended that the amount of interest which it paid thereon was interest on its own indebtedness, and, as such, was deductible by it under Section 23(b).

The Commissioner of Internal Revenue refused to allow such deductions. On appeal to the Tax Court of the United States, it was held that that part of the interest which accrued on the above described deficiencies subsequent to the date on which the company received the assets of the named corporations, was interest on its own indebtedness and was deductible as interest

under Section 23(b), but that the interest which accrued from the due date to the date the property was transferred to the company was not deductible. Both Koppers Company and the Commissioner have appealed from this determination. 3 T.C. 62.

The issue in the foregoing cases is whether the payments of interest on the deficiencies in question were payments on the indebtedness of those paying the interest, and so entitled, under Section 23(b), to deductions for "interest paid or accrued within the taxable year on indebtedness" of the taxpayers.

Counsel for the Commissioner argue that the payments of interest were, in the Breyer cases, payments on the indebtedness of the estate, and, in the Koppers cases, payments on the indebtedness of the prior corporations—and that in no case were such payments of interest made upon the indebtedness of those who paid them. It is conceded that the claimed deductions may not be taken unless the interest was owed upon the indebtedness of the taxpayers. See Scripps v. Commissioner, 6 Cir., 96 F.2d 492, certiorari denied, 305 U.S. 625, 59 S.Ct. 87, 83 L.Ed. 400. Since the payments of interest were made—as claimed by the Commissioner—upon indebtedness not owed by those making the payments, they are, it is insisted, not subject to deduction by such parties, under Section 23(b), in computing their net income.

In arriving at its determination, the Tax Court considered that the question whether the interest was paid upon the obligations of those making the payment or upon the obligations of their transferors depended upon the construction given to Section 311 (a) (1) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 311(a) (1) which provides:

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in the case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."

Disposing of the aforementioned arguments of the Commissioner, and sustaining the contentions of the taxpayers, the Tax Court observed that there was no break in the liability of the transferor corporations, in the Koppers cases, or on the part of the estate in the Breyer cases, to pay their respective deficiencies, with interest thereon from the date prescribed for payment of the tax, to the date on which the deficiencies were assessed. However, it was said that there was a break in the liability of the transferors which the statute imposed as such upon the transferees, and that when the assets were distributed to the transferees, that event measured the "liability of each transferor imposed as such upon the transferee, petitioner, by Section 311, supra. At that time, each transferor owed respondent the amount of its deficiency with interest thereon from the date of its determination. The petitioner took the assets encumbered with those debts. The debts as well as the assets became those of the petitioner. And the interest which thereafter accrued on those debts was, therefore, interest on the obligations of petitioner." It was further remarked that the intention of Congress to this effect was disclosed by the legislative history of the statutory section in question, particularly as instanced in the Conference Committee Report No. 356, 69th Congress, 1st Session, under Amendment No. 86, wherein it was set forth that "the liability of the taxpayer for the tax, including all interest and penalties, is fixed as of the time of the transfer of the assets. No further interest subsequently accrues upon such liability as assumed by the transferee, except the interest under Section 276(b) and (c), 26 U.S.C.A. Int. Rev.Code, § 276(b, c), for failure to pay upon notice and demand after the outlined procedure has been completed and interest at 6% a year for reimbursing the Government at the usual rate for loss of the use of the money due it." It was accordingly held that the interest on the deficiencies for the period after the transferees received the assets, was paid as interest on the indebtedness of the transferees and was, therefore, deductible from gross income for income tax purposes.

In reviewing the decision of the Tax Court, it is to be observed that the Court emphasized that the statutory provision, Section 311 of the Revenue Act of 1938, "may well be ambiguous," and further, that "the court cases and those of the Board of Tax Appeals construing the nature and effect of transferee and similar liabilities are not reconcilable. That inconsistency does not result from any difference of opinion as to the extent of the liability of a transferor. It arises in the character and measure of the liability of the transferor collectible as such from a transferee." In holding that the transferees were entitled to the deductions from gross income for the interest paid, the Tax Court overruled two of its previous cases, at the same time declaring that the contention that the transferees did not owe and pay the interest in question upon their own indebtedness rested upon an attenuated and unjustified application of the trust fund doctrine.

▆▆▆ We concur in the determination of the Tax Court, and are of the opinion that its decision should be sustained for two reasons—first, because, in our view, it is intended by the provision of the statute in question, Section 311, that transferees are to be treated the same as any other taxpayers and allowed the deduction for interest paid in the same way as the transferors would be allowed such deduction; and second, because the decision of the Tax Court in these cases seems, peculiarly, to call for application of the rule announced by the Supreme Court in the case of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

With respect to the disposition of the statutory question, it is provided by Section 311 that the liability of a transferee in respect of the tax and interest shall be assessed, collected, and paid in the same manner and subject to the same provisions as in the case of a deficiency against the taxpayer. The procedure prescribed for collection of the tax from a transferee is the same as that followed when payment is sought directly from a transferor. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. The transferee is a taxpayer. Phillips v. Commissioner, supra; United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Routzahn v. Tyrolear, 6 Cir., 36 F.2d 208. Under the statute, the transferee is liable for payment of the interest on the deficiency. That being the

case, does he owe it? Is it his indebtedness?

Certainly, the longer he delays payment of the deficiency, the longer he enjoys the use of that amouunt of money. When he finally pays the deficiency, he is liable for the payment of interest thereon until date of payment. It would seem that, in such a case, the transferee would be paying what he owed for the use of the money representing the deficiency—and that such a payment would be on his own indebtedness. If immediately at the time of the transfer of assets, instead of months afterward, the deficiency be paid, it would be the transferee, rather than the transferor, who would be saved the payment of the additional interest. The reference in the above mentioned Conference Report on Section 311 (Section 280 of the Revenue Act of 1926) to the liability for the deficiency as of the time of the transfer of the assets, "as assumed by the transferee" supports the contention that the liability of a transferee, resultant upon a transfer of assets, is an indebtedness on his part to the Government.

Moreover, the amount of the liability for which a transferee is liable is to be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax. Section 311(a), supra. A transferee who retains assets for his own use which, to the extent of a deficiency, belong to the Government, is liable for the interest that would have been otherwise charged against his transferor. Robinette v. Commissioner, 6 Cir., 139 F.2d 285. If interest on the deficiency is to be assessed against, and collected from, a transferee in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax, then such interest is to be collected subject to the allowance of that interest, as a deduction to the transferee, in the same manner as would be allowed to the transferor. Some cases appear to emphasize that because the liability for payment of a deficiency and interest thereon on the part of a transferor is secondary, it should not, therefore, be considered that he makes such payment on his own indebtedness. We can see no reason for uncertainty as to the right of deduction upon such ground.

As has been mentioned, the Tax Court held that denial to a transferee of a deduction for interest paid on a deficiency, rest-

ed upon an attenuated and unjustified application of the trust fund doctrine. With this conclusion we agree.

In some cases, it is said that when the transferee is required to pay a deficiency or interest thereon, he thereby "disgorges"; that a transferee always holds the assets received in trust for creditors including the Government; that while some authorities hold that the tax procedure with respect to transferees brings into play the doctrine of fraudulent conveyances, nevertheless, the trust fund doctrine seems better to fit the Congressional intent.* These concepts and expressions, savoring of remedies for fraud and deceit, breach of trust, and similar procedures, seem inappropriate when applied to a situation like the one before us. In the first place, they are unnecessary to enable the Government to collect the deficiencies, penalties, and interest, from transferees; and legal fictions and constructive trusts are not usually availed of when rights and liability can be determined by application of a rule of law or statutory provision.

In this regard, it is to be noted that the Government has a general lien for taxes, 26 U.S.C.A. Int.Rev.Code, §§ 3670, 3671, as well as a lien specifically for estate taxes (26 U.S.C.A. Int.Rev.Code, § 827). The statutory lien for the estate tax provides, among other things, that except in case of a bona fide sale for an adequate and full consideration, the transferee or beneficiary shall be personally liable for the tax; and the general statutory lien for federal taxes provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount with interest, penalty, and additions, shall be a lien upon all property and rights to property belonging to such person. The foregoing provisions further support the view that the liability of a transferee for payment of the taxes and interest thereon implies an indebtedness on the part of such transferee to the Government. It can also be persuasively contended that it is as reasonable to consider the liability of transferees or distributees in the light of holders of property subject to a lien for taxes (and also personally liable thereon) as it is to consider them constructive trustees subject to

being forced to "disgorge" for fraudulent conduct or breach of trust; and this seems to have been the conclusion of the members of the Tax Court (then the Board of Tax Appeals) in the case of The New McDermott, Inc. v. Commissioner, 44 B.T.A. 1035, where a deduction was allowed to a company which paid interest on a mortgage on property which it owned, although it had never assumed the mortgage.

In Dobson v. Commissioner, supra, we are told that if there was warrant in the record and a rational basis for the conclusions of the Tax Court, the judicial function of a reviewing court was then exhausted, and accordingly such a decision must be sustained; "when the court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand." 320 U.S. at page 502, 64 S.Ct. at page 247, 88 L.Ed. 248. In discussing the reasons for the finality that should attach to the determinations of the Tax Court, the Supreme Court, among other considerations, emphasized that the members of that court "not infrequently bring to their task long legislative or administrative experience in their subject. The volume of tax matters flowing through the Tax Court keeps its members abreast of changing statutes, regulations, and Bureau practices, informed as to the background of controversies, and aware of the impact of the decisions on both Treasury and taxpayer. * * * Congress has invested the Tax Court with primary authority for redetermining deficiencies, which constitutes the greater part of tax litigation. This requires it to consider both law and facts. * * * In deciding law questions courts may properly attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter. The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work. While its decisions may not be binding precedents for courts dealing with similar problems, uniform administration would be promoted by conforming to them where possible." 320 U.S. at page 498 et seq., 64 S.Ct. at page 245, 88 L.Ed. 248.

---

* Basing decision on the grounds mentioned are cases holding that deduction from gross income of interest paid by a transferee on a deficiency is not allowable under Section 23(a), contra to our determination herein. See Nunan v. Green, 8 Cir., 146 F.2d 352; C. I. R. v. Henderson, 5 Cir., 147 F.2d 619; C. I. R. v. Green, 9 Cir., 148 F.2d 157.

In the instant case, the Tax Court in reaching its decision, held there was a break in the liability of the transferors, which was imposed as such on the transferees, as of the time of the transfer of the assets, and that the transferor's debts for taxes on the happening of that event—the transfer—became those of the transferees. The Court in the Dobson case said: "Whether an apparently integrated transaction shall be broken up into several separate steps and whether what apparently are several steps shall be synthesized into one whole transaction is frequently a necessary determination in deciding tax consequences. Where no statute or regulation controls, the Tax Court's selection of the course to follow is no more reviewable than any other question of fact." 320 U.S. at page 502, 64 S.Ct. at page 247, 88 L.Ed. 248.

There is, in the case before us, no express limitation in the statute, Section 23 (b), upon the character of the taxable entity claiming the deduction, but the Tax Court found no difficulty—nor do we—in concluding that the interest paid by the transferees was interest upon their own indebtedness, and this without regard to whether their obligation was a primary or secondary obligation. See Scripps v. Commissioner, 6 Cir., 96 F.2d 492.

As stated by counsel for the transferees, Section 311 provides that the amounts for which the transferee is liable are to be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency imposed on any taxpayer. Any other taxpayer is charged with interest, and such interest is an allowable deduction. The law makes the tax a liability of the transferee. It provides for the collection of interest on that liability. There is no language in the statute to require or justify treatment of transferees on a basis different from that of any other taxpayers who are allowed deductions for payment of interest on deficiencies. As was emphasized in the Dobson case, in sustaining the decision of the Tax Court: "There is no statute law to the contrary." Even though we did not agree with the Tax Court's interpretation of the law in these particular cases, we would, under the circumstances, feel bound to sustain their decisions under the rule in the Dobson case. See also C. I. R. v. Scottish American Investment Co., 323 U.S. 119, 65 S.Ct. 169; Commissioner v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 156

A.L.R. 1022; Snyder v. Commissioner, 6 Cir., 148 F.2d 385.

One more question remains for determination. It was contended by counsel for the Koppers Company that the interest on the deficiencies for the period prior to the time of the transfer of the assets to the transferees, and which was subsequently paid by them, was deductible as interest paid on their indebtedness. The Tax Court denied such allowance on the ground that the entire amount of the liabilities of the transferors for tax deficiencies and interest thereon to the time of the transfer of assets was paid by the transferees as part of the cost basis of the assets "and not as its interest as such." Accordingly, it was held that none of such amount was deductible as interest payments on indebtedness under Section 23(b). With the Tax Court's conclusions in this regard, which followed the reasoning in its disposition of the other issues already discussed, we agree. Because of our determination, it is unnecessary to consider the cogent arguments advanced upon the special facts of the cases, and upon other legal aspects of the controversy by counsel for the transferees.

The decisions of the Tax Court are affirmed.