## HARRISON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12313.

United States Court of Appeals
Fifth Circuit.

April 4, 1949.

J. Edward Johnson, of Dallas, Tex., Thomas Y. Banks, of Tyler, Tex., and James S. Grisham, of Dallas, Tex., for petitioner.

Melva M. Graney, Ellis N. Slack, and Carlton Fox, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Chas. Oliphant, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES and LEE, Circuit Judges.

LEE, Circuit Judge.

The petition for review of the Tax Court's decision in this case was originally filed by Levi Clinton Harrison and relates to the degree of his liability as transferee of the Awoeb Oil Company, a dissolved corporation, for deficiency in income and declared-value excess-profits taxes of that corporation. The Tax Court held Harrison liable, as transferee of Awoeb, for income tax in the amount of $10,917.07 for the calendar year 1941 and for income and declared-value excess-profits taxes in the amounts of $52,125.20 and $26,573.99, respectively, for the calendar year 1942, together with interest thereon, as provided by law. The taxpayer in his petition did not question the amount of the corporation's tax deficiency as determined by the Tax Court but limited the issue to that portion of the Tax Court's decision which assessed the total transferee liability against him individually rather than against his wife and him on a community basis. While the case was pending and prior to its being heard in this court, the petitioning taxpayer died, and his widow, Mrs. Loula Mae Harrison, as independent testamentary executrix of the estate of Levi Clinton Harrison, by ap-

propriate proceedings, has been substituted as petitioner.

Awoeb Oil Company was taken over by Harrison in order to carry out certain business purposes. At the time this corporation was dissolved in December 1942, its stock was wholly owned by Harrison and his wife in community. On dissolution, all assets of the corporation were distributed to Levi Clinton Harrison, Transferee. These assets had a fair market value of $332,668.04. Some of them had been pledged against notes amounting to $239,500. Harrison paid the notes, thereby reducing the corporation's assets in his hands to $93,168.04. In 1945, the Internal Revenue Department determined a deficiency in the corporation's income and excess-profits taxes, the amount of which, plus interest, constituted the petitioner's liability as transferee of the assets of Awoeb. A revised computation of the original tax liability resulted in the amounts heretofore set out, totaling $89,616.26, together with interest thereon. Harrison admitted a transferee liability but claimed his liability was limited to $46,584.02, the value of half of the assets that remained. He founded this contention on the theory that, since the stock of the corporation was owned in community, the distribution to him was a distribution to the community, and the tax liability should, therefore, be allocated on a community basis between his wife and him. The opinion of the Tax Court upon which its decision was predicated was that, whether this liability be regarded Harrison's personal debt or payable from the property held by him as a trustee for the corporation's creditors, he would be liable as a transferee to the extent of the value of the assets received by him as transferee.

■ Section 311 of the Internal Revenue Code,[1] 26 U.S.C.A. § 311, provides administrative procedure for the collection of sums representing transferee liability for tax but does not foist new liability on the transferee. This codal provision is not different from that found in § 316(a) (1) of the Revenue Act of 1926, which was before this court in Commissioner of Internal Revenue v. Henderson, 147 F.2d 619, 620. There Judge Holmes wrote of the statute as follows: " * * * but the statute does not attempt to declare, define, limit, or alter in any way, the substantive law relating to the liability of a transferee. It simply provides a summary administrative remedy for the enforcement of that liability, whatever it may be."

As Mertens[2] puts it: "The transferee provisions do not impose any new obligations upon the transferee of property of a taxpayer; they merely permit collection from him by a summary procedure of his existing liability in law or equity. In other words, it is the liability of the transferee that could have been enforced by appropriate remedy in the federal courts which is enforced under the transferee provisions. Thus, the nature and extent of a transferee's liability must be determined by the settled principles of the common law and federal and local statutes. The liability of a transferee is secondary, not primary. A transferee is bound by a prior decision determining the liability of the transferor."

■ Harrison's liability is measured by laws of transferee liability generally. Notwithstanding Texas law[3] constituting the husband head of the community for the benefit of his wife and him, as between the

---

[1] "Transferred assets

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."

[2] Law of Federal Income Taxation, vol. 9, pp. 494–495, § 53.06. See also Phillips v. C. I. R., 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

[3] Vernon's Civil Statutes of Texas, art. 4619.

738

Government and the transferee, the community is not involved in the Government's claim for taxes assessed against a transferee, as such. Transferee liability to creditors of the transferor and alike to the Government for taxes and interest of the transferor is, to the extent of the assets held, an in rem liability. The jurisprudence is crystallized in Commissioner v. Henderson, supra, in these words: " * * * The equitable right arising in equity in favor of the Government does not impose a personal liability upon the transferee; his obligation is of a character materially different. His liability is purely secondary; he owes no duty of any kind until the Government has exhausted all remedies against the estate, unless the attempted enforcement of such remedies would be vain and useless. The action against him is in the nature of a proceeding in rem, and he cannot be forced to disgorge more than he has received from the primary obligor. In essence, the liability of the transferee that was here enforced was based upon the fundamental principle that equity will not permit one to hold property belonging to an insolvent beyond the reach of creditors of the insolvent. Since the liability and the remedy are so characterized, it is obvious that the transferee neither owed the debt nor paid it. The indebtedness remained the obligation of the transferor, and it was discharged with funds that belonged to the transferor but were held in trust for him or his creditors by another."

In short, we are here not faced with personal liability but with trustee liability to the extent of the fund placed in Harrison's hands, from which he is bound to pay all taxes due from the transferor to the extent of the fund. A transferee of private property, burdened with debts of the transferor, receives the property as a trustee, charged with such debts, and is required to disgorge so much of the property as is necessary to discharge the indebtedness.

In the present case, the indebtedness ($89,616.26), together with interest thereon, exceeded the value ($93,168.04) of the corporate assets that Harrison, as transferee, held; hence, no beneficial interest therein passed to the community estate. This being true, no assets were acquired by the community within the meaning of art. 4619, Vernon's Civil Statutes of Texas. Cf. La Force v. Bracken, Tex. Civ.App., 163 S.W.2d 239, affirmed 141 Tex. 18, 169 S.W.2d 465.

The decision of the Tax Court is Affirmed.