BRENDA POWERS HUNT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hunt v. Commissioner
Docket No. 1064-86
United States Tax Court
T.C. Memo 1988-360; 1988 Tax Ct. Memo LEXIS 388; 55 T.C.M. (CCH) 1508; T.C.M. (RIA) 88360; August 9, 1988
*388 P's brother transferred real property to P at a time when he owed deficiencies in tax. R determined that P was liable as a transferee of assets under I.R.C. section 6901(a). Held, R has failed his burden of proving that the deed was voluntary and that P's brother was insolvent at the time of the transfer. Robert J. *389 Hipple, for the petitioner. Bonnie L. Cameron, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent assessed deficiencies in income taxes and additions to tax against James P. Powers III as follows: Addition to Tax
Year
Deficiency
Section 6654[1]
1976
$ 1,113
$  42
1977
7,478
266
1978
3,964
128
The issue for decision is whether petitioner is liable as a transferee of assets of James Powers III for the deficiencies in tax and additions to tax as determined above. FINDINGS OF FACT Petitioner resided in Stone Mountain, Georgia, and James P. Powers III (hereinafter referred to as James) resided in Buford, Georgia, at the time the petitioner in this case was filed. Petitioner and James are sister and brother, and Ruby Powers is their mother. At least as early as August, 1964, James was married to Marie Powers (hereinafter *390 referred to as Marie). On August 28, 1964, James purchased a three-bedroom house and lot located at 1187 Robin Road, Conyers, Georgia (hereinafter sometimes referred to as the Robin Road property). The deed was recorded on September 4, 1964. On August 27, 1964, petitioner loaned James $ 1,200 from her insurance proceeds for the down payment on the purchase of the Robin Road property. In 1968 James and Marie were divorced. Although James kept the house on Robin Road for himself after the divorce, he moved in with petitioner and lived with her in her rental home from 1968 until 1969. In 1969 petitioner and James moved into the house on Robin Road. At that time petitioner paid $ 3,400 for furnishings for the house which she obtained from a settlement of a tort claim. Petitioner paid $ 105.99 a month for the mortgage on the Robin Road property from the time James moved in with her in 1968 until she moved out of the Robin Road house in 1971 to get married. When petitioner moved out, she left all of the furniture in the Robin Road house with James. During the time they lived together, petitioner supported James and also paid $ 60 a month for his child support payments. *391 James operated an ambulance service in Rockdale County, Georgia, from the years 1976 through 1982. The ambulance service operated by James received an annual subsidy from Rockdale County, Georgia, in the amount of $ 300,000 and derived additional income from independent billing. As of December 31, 1979, James owed approximately $ 101,000 in Federal employment taxes. The Federal employment taxes were James' personal obligation. As of December 31, 1979, James owed the State of Georgia $ 19,654.74 in unemployment insurance taxes and $ 9, 554.04 in employment taxes in connection with his ambulance service. The unemployment insurance taxes James owed to the State of Georgia were paid on July 30, 1984, and the employment taxes were paid on July 10, 1980. During the period from 1971 through 1979, James continually lacked sufficient cash to pay his bills. Petitioner added money to James' checking account to help him pay his bills during this period. In late 1979 petitioner asked James to return some of her money. He replied that he did not have cash because all his money was tied up in his ambulance service. In response to petitioner's request for *392 money, James transferred the Robin Road property by warranty deed to her on December 24, 1979. The deed recites that the property was transferred for a consideration of "Ten Dollars and other valuable considerations," and reflects a payment of $ 29 in real estate transfer tax. Market data showed that the price for a home from January, 1977, to November, 1979, in the immediate neighborhood in which the Robin Road property was located ranged between $ 32,900 and $ 42,500. When she received the Robin Road property, petitioner borrowed approximately $ 5,000 from her mother, Ruby Powers, to pay off the principal balance on an existing mortgage on the property. In September, 1982, petitioner sold the Robin Road property to her mother for cancellation of $ 28,000 in loans made to her by her mother, including the $ 5,000 loan to pay off the mortgage in December, 1979. In March, 1985, Ruby Powers sold the Robin Road property to Emma Janet Stanton for approximately $ 43,000. James continued to operate his ambulance service until 1982. In 1982 James transferred three ambulances to his mother, Ruby Powers. Federal income tax returns for the years 1976, 1977 and 1978 were filed for *393 James on October 28, 1982. On November 26, 1982, Federal income taxes in the amounts of $ 1,113, $ 7,478 and $ 3,964 were assessed against James for the respective years 1976, 1977 and 1978. When James transferred the Robin Road property to petitioner in December, 1979, petitioner had no knowledge of the financial status of James' ambulance service, nor did she know that James had failed to file income tax returns or to pay taxes for the years in issue. OPINION Respondent determined that petitioner was liable as a transferee of assets for the deficiencies in James' income tax and additions to tax as determined above. Under section 6901(a), [2] the liability of a transferee may be assessed, paid and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred. Section 6901(h) includes in the classification of a transferee, a "donee, heir, legatee, devisee and distributee." Courts have defined a transferee as one who takes or receives property of another without full, fair and adequate consideration *394 to the prejudice of creditors. United State v. Floersch,276 F.2d 714, 717 (10th Cir. 1960); First National Bank of Chicago v. Commissioner,255 F.2d 759, 762 (7th Cir. 1958), affg. 27 T.C. 479 (1956). [3]
*395 A transferee is liable retroactively for the transferor's taxes and additions to tax in the year of the transfer. Swinks v. Commissioner,51 T.C. 13, 17 (1968). Transferee liability subjects the property in the hands of the transferee to the debts of the transferor. United State v. Floersch, supra;Harrison v. Commissioner,173 F.2d 736 (5th Cir. 1949), affg. a Memorandum Opinion of this Court. The transferee's liability is limited to the fair market value of the property received from the transferor. See, e.g., C.D. Construction Corporation v. Commissioner,451 F.2d 470 (4th Cir. 1971), affg. T.C. Memo. 1970-297. Lowy v. Commissioner,35 T.C. 393, 394-398 (1960). Respondent bears the burden of proving, by a preponderance of the evidence, that petitioner is liable as a transferee of property of James, but not that James was liable for the tax. Section 6902(a); Rule 142(d); C.B.C. Super Markets, Inc. v. Commissioner,54 T.C. 882, 898 (1970). The provisions of section *396 6901 are merely procedural; the existence and extent of a transferee's liability for the unpaid tax liability of the transferor is determined under state law. Commissioner v. Stern,357 U.S. 39, 45 (1958). Accordingly, we must decide the issue in this case under the law of Georgia. The applicable statute in this case is Ga. Code Ann. section 18-2-22 (hereinafter cited as section 18-2-22), which sets forth the rights of creditors to pursue property transfers as follows: The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void: (1) Every assignment or transfer by a debtor, insolvent at the time, of real or personal property or choses in action of any description to any person, either in trust or for the benefit of or on behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him; (2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with intention to delay *397 or defraud creditors, where the taking party is without notice or ground for reasonable suspicion of said intent of the creditor, shall be valid; and (3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance. The parties agree that paragraphs (1) and (2) of section 18-2-22 do not apply in this case. To prove that the transfer of the Robin Road property was fraudulent under paragraph (3) of section 18-2-22, respondent must show the indebtedness, the insolvency of the debtor and that the deed was voluntary. Chambers v. Citizens & Southern National Bank,242 Ga. 498, 249 S.E.2d 214, 217 (1978). It is not necessary for respondent to show fraudulent intent under paragraph (3) of section 18-2-22. Chambers v. Citizens & Southern National Bank, supra;Neal v. Stapleton,203 Ga. 236, 46 S.E.2d 130, 134 (1948). The evidence shows that James did not pay his taxes for the years 1976, 1977 and 1978 when they were due. James transferred the Robin Road property to petitioner *398 on December 24, 1979, after he incurred the tax liabilities for the years in issue. Accordingly, respondent has established James' indebtedness. However, respondent has failed to prove that the deed transferring the Robin Road property to petitioner was voluntary. Nor has respondent proved that James was insolvent at the time of the transfer. Under Georgia law a voluntary deed is one without any valuable consideration. Stokes v. McRae,247 Ga. 658, 278 S.E.2d 393, 395 (1981). A valuable consideration is founded on money, or something convertible into money or having a value in money. Stokes v. McRae, supra.
In Georgia, a conveyance of property between related parties in payment of a pre-existing indebtedness is based on valuable consideration and is not a voluntary conveyance. Staton v. Adams,180 Ga. 142, 178 S.E. 154 (1935); Holt v. Daniel,47 Ga. App. 334, 170 S.E. 383 (1933). However, a transfer by a debtor to a related party of property of a value that is grossly in excess of the amount owed to the related party will be set aside as a fraud upon the other creditors of the debtor. United States v. McMahan,392 F. Supp. 1159, 1165-1166 (N.D. Ga. 1975), *399 affd. 556 F.2d 362 (5th Cir. 1977), revd. en banc on another issue 569 F.2d 889 (5th Cir. 1978); Strickland v. Davis,184 Ga. 76, 190 S.E. 586, 588-589 (1937). The evidence supports petitioner's testimony that she received the Robin Road property from James in cancellation of $ 29,000 in debts that James owed her. The face of the deed under which the Robin Road property was transferred to petitioner reflects the payment of a real estate transfer tax of $ 29, which is the tax due on a conveyance of property for a consideration of $ 29,000. See Ga. Code Ann. section 48-6-1 (imposing a tax at the rate of $ 1 for the first $ 1,000 or fractional part of $ 1,000 and 10 cents for each additional $ 100 or fractional part of $ 100 on a deed by which realty is transferred to a purchaser or purchasers when the consideration or value of the property conveyed exceeds $ 100.) Petitioner testified that in 1964 she loaned James $ 1,200 for a down payment for the Robin Road property, that from 1968 through 1971 she made mortgage payments in the amount of $ 105.99 per month on the Robin property and paid $ 60 per month in child support to James' former *400 wife, that she loaned James approximately $ 7,000 for his maintenance and support from 1968 through 1969 and approximately $ 5,000 for his maintenance and support from 1971 through 1979. In addition, petitioner loaned James $ 3,400 in1969 to purchase furnishings for the house on Robin Road. Petitioner borrowed $ 5,000 from her mother in 1979 to pay off the mortgage on the Robin Road property. In 1979 petitioner and James added all the loans she advanced to him and determined that he owed her $ 29,000 which included interest. Respondent argues that petitioner could not have earned enough from 1968 through 1979 to have advanced so much money to James. Of the amounts petitioner loaned to James, petitioner's uncontroverted testimony establishes that she obtained $ 1,200 for the down payment on the Robin Road property from insurance proceeds, $ 3,400 to purchase furnishings for the house from a settlement of a tort claim and $ 5,000 as a loan from her mother to pay off the mortgage on the Robin Road property. In 1967 petitioner began working for Western Electric which was part of AT&T. Petitioner has been employed by AT&T since 1967 and continued to work there as of the time *401 this case was tried. Petitioner could not remember how much she earned at AT&T from 1968 through 1979. However, she testified that when she began working at Western Electric on March 14, 1967, she earned $ 88.50 a week and that at the time of trial she was earning $ 36,000 per year at AT&T. Although we cannot find that petitioner loaned James $ 7,000 from the wages she earned at AT&T from 1968 to 1969, we believe that she loaned him at least $ 5,000 generated essentially from this source during the period from 1971 through 1979. Having heard petitioner's testimony, we believe that the sums she testified to were basically rough estimates. Petitioner's uncontroverted testimony established that she and James determined that he owed her $ 29,000 in loans extended to him during the period from 1964 through 1979. The amount of real estate transfer tax recited on the deed corroborates that the debt was $ 29,000. The testimony of Ruby Powers supports a finding that petitioner loaned money to James and paid off the mortgage on the Robin Road property. Accordingly, we find that James transferred the Robin Road property to petitioner for consideration of $ 29,000. In an attempt to *402 establish that $ 29,000 was grossly inadequate consideration for the Robin Road property, respondent offered the testimony and a report of an expert witness who determined that the property was worth approximately $ 40,000 in 1979. Respondent's expert compared other houses in the neighborhood that had been sold during the period from January, 1977, through November, 1979, whose price range varied from $ 32,900 to $ 42,500. The expert's report contains photographs of the houses which she used for comparison and a photograph of the Robin Road property. The photographs in the expert's report show that the Robin Road property was not as well maintained as the property with which it was compared. Respondent's expert did not view the interior of the Robin Road property or the interiors of the houses which she used for comparison. Petitioner testified that when she received the Robin Road property in December, 1979, much repair work was necessary because the ceiling in one of the bedrooms had fallen through from water damage attributable to a leak in the roof, the plumbing in the master bathroom was protruding out of the wall, the floor in the kitchen was buckled from rain that had *403 leaked in through the roof, the driveway was broken and certain doors and windows were broken throughout the house. The photograph of the Robin Road property supports a finding that the interior of the house had fallen into disrepair. We find petitioner's testimony credible and therefore do not believe that the Robin Road property was worth $ 40,000 when James transferred it to petitioner in December, 1979. Accordingly, the consideration petitioner paid for the property was not grossly inadequate and the deed was not voluntary. Even if the deed in this case were voluntary, respondent has failed to prove that James was insolvent at the time he transferred the Robin Road property to petitioner. A debtor is insolvent within the meaning of section 18-2-22(3) if after the voluntary deed or conveyance, the value of his remaining property is not sufficient to pay in full all of his debts. Goodman v. Lewis,247 Ga. 605, 277 S.E.2d 908, 909-910 n.1 (1981). The value of the debtor's remaining property must be determined as of the date the conveyance sought to be set aside was *404 made. Goodman v. Lewis, supra.
Although petitioner testified that James "was forever running short of money," during the years 1971 through 1979, her statement only shows that James suffered from a lack of liquid funds. Respondent has established that at the time of the transfer to petitioner of the Robin Road property James owed the State of Georgia $ 9, 554.04 in employment taxes and $ 19,654.74 in unemployment insurance taxes and that he owed the Federal Government approximately $ 12,991 in Federal income taxes and additions to tax and approximately $ 101,000 in Federal employment taxes, or a total of $ 143,199.78. However, the evidence shows that James was operating an ambulance service at the time he transferred the Robin Road property to petitioner and that, in addition to a $ 300,000 annual subsidy from Rockdale County, James' ambulance service received income from independent billings. The ambulance service operated by James continued as an ongoing business after the December 24, 1979, transfer of the property to petitioner. Respondent offered the testimony of Revenue Officer Kenneth Thompson to show that James was insolvent *405 at the time of the transfer of the Robin Road property to petitioner. Thompson testified that in 1983 and 1984 he searched the public records for property belonging to James and found three ambulances registered in James' name. Later, Thompson learned that James had transferred the ambulances to his mother, Ruby Powers, in 1982. The ambulance service operated by James closed in 1982. We conclude that in December, 1979, James owned three ambulances for use in his business. Respondent has failed his burden of proving the value of the ambulances which James owned in 1979 and that James did not possess sufficient property to pay his state and Federal tax liabilities when he transferred the Robin Road property to petitioner. Accordingly, respondent has failed his burden of proving that petitioner was liable as a transferee under section 6901. [4]
To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Except as otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect at the time of the transfer involved herein. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 6901 provides in pertinent part: (a) METHOD OF COLLECTION. -- The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) INCOME, ESTATE, AND GIFT TAXES. -- (A) TRANSFEREES. -- The liability, at law or in equity, of a transferee of property -- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * in respect of the tax imposed by subtitle A or B. (b) LIABILITY. -- Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax. * * * (h) DEFINITION OF TRANSFEREE. -- As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee * * *. ↩
3. We note that the Supreme Court has held that the existence and extent of transferee liability is determined under state law. Commissioner v. Stern,357 U.S. 39, 45↩ (1958). Bittker has observed that transferee liability can arise under a state creditor protection statute even though the transferee has paid full value for the transferred property, i.e., if the procedural requirements of the statute were not satisfied. Thus, the definition of transferee in the text, while usually accurate, may be too restrictive. See 4 Bittker, Federal Taxation of Income, Estates and Gifts, par. 111.5.7, p. 111-119 (1981). 4. Because we hold for petitioner on this ground, we need not address petitioner's other arguments. ↩